# Richmond

## LILLIAN STUBBS v. FRANCES COWDEN.

January 19, 1942.

Record No. 2473.

Present, All the Justices.*

*Campbell, C. J., not participating.

The opinion states the case.

*Broudy & Broudy*, for the plaintiff in error.

*Venable, Miller, Pilcher & Parsons* and *Herman A. Sacks*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is a proceeding by notice of motion brought by Lillian Stubbs against Frances Cowden to recover damages in an action of slander under the statute for insulting words. The defendant pleaded not guilty. No grounds of defense were requested or filed.

There were two trials, the first resulting in a verdict for

the plaintiff in the sum of $5,000, the full amount for which she sued. On March 2, 1938, the court, on motion of the defendant, set aside the verdict and awarded a new trial, to which action the plaintiff excepted. The case then remained on the docket for nearly three years until notice was served by the clerk that it was about to be dismissed for failure to prosecute.

The second trial of the case was held on February 1, 1941, the parties appearing by their attorneys. As neither party demanded a jury, and as the plaintiff elected not to put on any evidence, the whole matter of law and fact was heard and determined by the court. Judgment was then rendered in favor of the defendant.

The only evidence certified to us is that given upon the first trial and in the affidavits submitted on the motion for a new trial. The evidence is in narrative form since there was no stenographic report. It is a summary statement made up from skeleton notes used by the counsel for the defendant in arguing the motion for a new trial.

The original trial of the case lasted two days. The record shows no objection of the plaintiff to any of the evidence of the defendant nor to any of the instructions given to the jury.

The evidence, which was introduced as to the good character and reputation of the plaintiff, was contradicted by that of the defendant.

One of the instructions directed the jury that if they believed the plaintiff was entitled to recover anything, "then, in assessing her damages, you may take into consideration her improper relations with Cowden if proven in this case, in mitigation of any damages you may think she is entitled to."

The instructions set out the law of the case as tried. That case we now review.

The evidence, so far as is pertinent, was as follows:

Mrs. Frances Cowden, in September, 1937, instituted a suit for divorce against her husband, John Cowden, in the Circuit Court of the City of Norfolk, on the ground of

adultery, naming Lillian Stubbs, the plaintiff in this action, as co-respondent. The husband did not contest the suit. On the 4th day of December, 1937, Mrs. Cowden was granted a divorce *a vinculo*. On this same day Mrs. Stubbs instituted this action of slander.

Mrs. Stubbs and Mrs. Cowden were acquaintances and lived in the same neighborhood, their respective homes being about three or four hundred feet apart. Mrs. Stubbs had been married about seventeen years. Her husband was an employee of the American Railway Express Company for which he worked from two o'clock in the afternoon to eight-thirty in the evening. He and John Cowden were on friendly terms, the latter having helped him build the house where he lived. Cowden was employed at the United States Naval Base near Norfolk.

Edward Phelps, whose wife is a sister of Mrs. Stubbs' husband, testified that he saw Mrs. Cowden at the Naval Base where he worked on October 18, 1937; that she then told him she was going to sue her husband for a divorce; and that Mrs. Stubbs was a "whore" and "a common reprobate" and "was worse than people on East Main street."

Mrs. Stubbs said that on September 13, 1937, Mrs. Cowden called her on the telephone and, attempting to disguise her voice, used the same insulting language towards her that she later used in the presence of Phelps; that she called her another vile name and told her that she would be sent back to England, where she came from, if she did not leave her husband, John Cowden, alone; that she was so frequently called up and annoyed in this manner by various other people she was compelled to secure a secret telephone number; that even after the number was changed, such telephone calls were repeated; that Mrs. Cowden frequently called her up and asked if Cowden was there; that Cowden never visited her in the absence of her husband; that she had heard that Mrs. Cowden was going to bring a suit for divorce and name her as co-respondent, but that Cowden had promised her he would contest the case; that she was in her attorney's office on December 4, 1937, when the

evidence in the divorce case was being heard, and she learned that morning that Mrs. Cowden had obtained an uncontested divorce; that Phelps repeated to her the insulting language which he said had been spoken by the defendant; that the peace and happiness of her home and her health had been impaired by reason of the defendant's activities and the numerous telephone calls; and that she "was not after the money" from Mrs. Cowden but wanted to stop further annoyance.

On cross-examination Mrs. Stubbs denied that she had improper relations with Cowden; that she had ever gone to a restaurant with him; that she had written him notes or letters of any kind; or that she had given him her photograph or a lock of her hair.

J. B. Stubbs testified that the accusations against his wife were not true, and that he had the greatest confidence in her; that Mrs. Cowden had told him everybody knew his wife's reputation except himself; that if he would have his telephone wires tapped, he would find out plenty about her; that Cowden would have been back home long ago if it had not been for Mrs. Stubbs; and that his wife had become hysterical and was greatly humiliated and embarrassed.

A number of witnesses testified that Mrs. Stubbs bore a good reputation for truth and veracity.

John Cowden, called as a witness for his former wife, said that he had visited the Stubbs' home frequently; that he went riding with Mrs. Stubbs without her husband; that on several occasions they took meals at a restaurant together; that after he was sued for divorce, Mrs. Stubbs told him to tell his wife if she did not drop the divorce suit, she would sue her; that she also told him he would have to fight the divorce suit; that he thereupon employed counsel; that he vainly tried to get his wife to dismiss the case; that about thirty days before the divorce suit came up for hearing, he told his attorney he could not fight the case because he was guilty of the charges; that Mrs. Stubbs gave him the lock of her hair, her photograph, and wrote him the let-

ters and notes which he produced in evidence; that he did not want the divorce suit to come to trial because it would disclose his relationship with Mrs. Stubbs; that after Mrs. Stubbs' telephone number was changed, she gave him her secret telephone number so he could call her; and that she frequently called him over the telephone after his wife secured a divorce.

Mrs. Cowden testified that observing a difference in her marital relations and hearing rumors of her husband's association with Mrs. Stubbs, she started an investigation and found that Cowden had been visiting Mrs. Stubbs in her husband's absence; that he had been out riding with her; that he was frequently away from home on trips when Mrs. Stubbs was also away; and that she had brought her divorce suit after she had learned about the manner of her husband's visits to the Stubbs' home and his secret association with Mrs. Stubbs. She said that she had no conversation with Phelps until after the suit was brought and denied using the language attributed to her by Phelps and Mrs. Stubbs, either in person or over the telephone. She stated that while the divorce suit was pending, Cowden tried to get her to withdraw it and told her if she did not do so, Mrs. Stubbs would sue her; that other persons in the neighborhood, who knew of the over-friendly relations between Cowden and Mrs. Stubbs, had telephoned the latter and had discussed the situation with her, Mrs. Cowden; that she did not tap Mrs. Stubbs' telephone or authorize, direct, or encourage anyone else to telephone Mrs. Stubbs; and that she got along nicely with her husband until Mrs. Stubbs broke up her home.

Three witnesses testified that at various times they had seen Cowden and Mrs. Stubbs together out walking or driving in an automobile; and that Cowden, on several occasions, when Stubbs was absent, had parked his car in the woods back of the Stubbs' home and gone from there to the house, although it would have been easier and nearer for him to have approached that home by driving in front of it, where it could have been seen by Mrs. Cowden. One said

that shortly after he entered the house, the lights went out and did not come back on until he left. Another said there had been "a good bit of gossip about Cowden and Mrs. Stubbs" in the neighborhood, and that Mrs. Stubbs, on one occasion, had told her that if she testified for Mrs. Cowden in a divorce suit, which she had heard would be brought, she would sue her.

A fellow-workman of Cowden's said that Mrs. Stubbs so often called Cowden over the telephone at the place where he worked that he came near losing his job on that account; and that he had frequently talked to Cowden about it, but Cowden told him that he could not break away from Mrs. Stubbs.

Another witness said that Cowden and Mrs. Stubbs came to his restaurant on several occasions and remained there for three or four hours at the time.

The sole error assigned in the petition for this writ of error is the action of the trial court in setting aside the verdict of the jury in the first trial and awarding a new trial.

The motion of the defendant to set aside the verdict was based on the grounds that it was contrary to the law and the evidence; that it was excessive; that the jury was influenced by passion, prejudice, or partiality or misconceived the facts and the law; that the court erred in the giving and refusing of instructions and in the admission of evidence; that argument of counsel for the plaintiff was improper; and for after-discovered evidence.

The affidavits of two disinterested persons, setting out the after-discovered evidence, showed that on July 6, 1937, Lillian Stubbs spent a portion of the preceding night and a part of that day with John Cowden in a tourist cabin in Norfolk county and that she had been seen with him on July 5, 1937, and on several other occasions in North Carolina. Mrs. Cowden filed her affidavit alleging that she did not know of the existence of this evidence until after the trial; that she could not have discovered it by the use of due diligence; and that it could be produced at another trial. No counter-affidavits were filed.

The judgment of the trial court is presumed to be correct. The burden is on the plaintiff to satisfy this court of error. The trial court is more than a mere umpire in the trial of a common-law action, and notwithstanding the weight of a jury's verdict, that verdict is subject to the control of the court in the attainment of justice. *Glass* v. *David Pender Grocery Co.*, 174 Va. 196, 5 S. E. (2d) 478; *C. D. Kenny Co.* v. *Solomon*, 158 Va. 25, 163 S. E. 97; *Land* v. *Yellow Cab Co. of Norfolk*, 150 Va. 467, 143 S. E. 709.

More latitude is allowed a trial court in granting a new trial than in refusing one. The trial judge has the benefit of seeing and hearing the witnesses and of observing their demeanor and general attitude and is familiar with all of the incidents of the trial. The granting of a new trial invites further investigation, while a refusal operates as a final adjudication of the rights of the parties. A stronger case must be made to justify this court in disturbing an order granting a new trial than one which has been refused. *Trauerman* v. *Oliver's Adm'r*, 125 Va. 458, 99 S. E. 647.

In considering the sole assignment of error in this case, we need only determine whether the after-discovered evidence was sufficient to justify the court's action and whether the verdict was excessive.

The motion for a new trial for after-discovered evidence was based upon the affidavits of two disinterested persons tending to show that Mrs. Stubbs had been guilty of improper relations with Cowden. They were not contradicted, and their allegations must be presumed to be true. *Hodnett* v. *City of Danville*, 152 Va. 955, 146 S. E. 281.

The sufficiency of newly discovered evidence to justify the granting of a new trial has been too often stated in the cases and by textbook writers to require repetition. Burks' Pleading and Practice (3rd Ed.), page 536; 7 Michie's Digest of Va. and W. Va. Reports, page 723, and cases cited.

Only Cowden, Mrs. Stubbs, and the operator of the tourist camp apparently knew that Mrs. Stubbs had spent a

portion of the night and day in a tourist cabin. Mrs. Cowden did not know of the specific visits to North Carolina and had no means of discovering the same. There was nothing to indicate to her that the new witnesses had that information. Cowden said he did not want his wife to secure a divorce decree and naturally hid it from her. It was only after the verdict against his wife had been rendered that he told her of his specific illicit relations with the plaintiff. If this had been known by her prior to the first trial, she would have been in a position to have availed herself of it for defense.

■ The new evidence was material in its object and was such as on another trial ought to have produced an opposite result on the merits. On the second trial an opposite result was produced. It was not, moreover, merely cumulative, corroborative, or collateral; but attacked the character and reputation of the plaintiff and contradicted her testimony on a material matter in an issue of this case. It could not have been discovered before the trial by the use of due diligence and could be produced at another trial.

It is also significant, we think, that the plaintiff refrained from prosecuting her case for three years. It would seem, if she had been guiltless, that every normal instinct would have prompted her to demand an immediate new trial. When the new trial was held, she offered no evidence.

■■ The determination of the amount of damages in such an action as this is primarily the province of the jury under proper instructions of the court, and the courts are generally reluctant to interfere with their verdict. Nevertheless, each case must be considered on its own facts and circumstances, and, whether the award is inadequate or excessive is a legal question addressed to the sound discretion of the court in the exercise of its supervisory power over verdicts to prevent a miscarriage of justice. The verdict of a jury cannot be allowed to work injustice and oppression. *Chesapeake & O. R. Co.* v. *Arrington*, 126 Va. 194, 101 S. E. 415; *Land* v. *Yellow Cab Co. of Norfolk, supra; Bishop*

v. *Webster*, 154 Va. 771, 153 S. E. 832, 155 S. E. 828; *C. D. Kenny Co.* v. *Solomon, supra; American Oil Co.* v. *Nicholas*, 156 Va. 1, 157 S. E. 754; *Hess* v. *Marinari*, 81 W. Va. 500, 94 S. E. 968.

There is no evidence in this case showing a pecuniary loss to the plaintiff. The plaintiff said that she was "not after the money," but wanted to stop further annoyance. The jury, however, awarded her $5,000.

We do not know what amount was awarded as compensatory damages, for the injury actually suffered, nor the amount for exemplary damages, as a punishment against the defendant.

█ While there is no rule fixing the *quantum* of compensation for insult, mental suffering, and injury to the reputation or for punishment of the offender, one of unblemished reputation is entitled to greater damages than one whose reputation is such that he is little hurt from the action of which complaint is made. The effect of bad reputation is to reduce the damage inflicted. *Weatherford* v. *Birchett*, 158 Va. 741, 164 S. E. 535.

█ To recover punitive damages largely in excess of what ordinarily might be expected as punishment for the particular offense, there should be some evidence to show that the defendant's condition was so different from the ordinary person that it was necessary to award such damages to constitute, under the circumstances, a sufficient punishment for the acts complained of. *Bishop* v. *Webster, supra; Hess* v. *Marinari, supra.*

There is no evidence showing the standing of the defendant in the community, her wealth, or social position, except that the court in the divorce proceedings thought it necessary to allow her alimony at $10 per week; nor is there anything to indicate a necessity for imposing a $5,000 fine upon Mrs. Cowden in order to punish her for the alleged offense. There is evidence of the provocation suffered by the defendant on account of plaintiff's conduct.

The defendant was not responsible for the annoyance suffered by the plaintiff as a result of telephone calls from

third persons where the acts of such persons could not be charged to the defendant.

The damages awarded should bear some reasonable proportion to the real damages sustained and to the measure of punishment required; otherwise, they indicate prejudice or partiality.

We have been called upon to decide no case in Virginia similar in all respects to the evidence, circumstances, and proceedings as now before us. Fortunately, such cases are rare in this country. Under the peculiar circumstances of this case, we are of opinion that the verdict was excessive; but inasmuch as the defendant was entitled to have it set aside and a new trial awarded on the ground of after-discovered evidence, we deem it unnecessary to decide to what extent the excessiveness indicated the impropriety of the jury in finding a verdict for the plaintiff. *Land* v. *Yellow Cab Co., supra; Albemarle Oil & Gas Co.* v. *Walton,* 162 Va. 373, 174 S. E. 680.

The case of *Kroger Grocery & Baking Co.* v. *Rosenbaum,* 171 Va. 158, 198 S. E. 461, is not directly in point here. The facts and circumstances of that case are almost entirely dissimilar to those of the instant case.

The trial court did not err in setting aside the verdict of the first trial. No question is here raised as to the second trial and the judgment thereon. Therefore, the final judgment of the trial court is affirmed.

*Affirmed.*

CAMPBELL, C. J., not participating.