# Richmond

MILDRED WILBORNE FULCHER v. BEULAH F. WHITLOW.

June 12, 1967.

Record No. 6427.

Present, Eggleston, C.J., and Buchanan, Snead, I'Anson, Carrico, and Gordon, J.J.

*Edwin B. Meade (Meade, Tate and Meade,* on brief), for plaintiff in error.

*Dan P. Bagwell; Hester H. Dillard (Tuck, Bagwell, Dillard & Mapp,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The principal question involved in this appeal is whether the trial court erred in granting a new trial on the ground of after-discovered evidence.

This litigation was commenced when Beulah F. Whitlow, the plaintiff, filed a motion for judgment against Mildred Wilborne Fulcher, the defendant, seeking to recover damages for personal injuries allegedly sustained by the plaintiff when an automobile operated by her was in collision with a pickup truck operated by the defendant.

The first trial before a jury resulted in a verdict in favor of the defendant. Thereafter, the plaintiff filed a motion for a new trial, alleging that she had discovered evidence since the trial which was material and such as on another trial ought to produce opposite results. The plaintiff further alleged that she could not have discovered the new evidence before the trial by use of due diligence. The plaintiff filed affidavits in support of her motion, and the defendant filed counter affidavits.

The trial court granted the plaintiff's motion and ordered a new trial. At the second trial, the alleged after-discovered evidence was introduced, and the jury returned a verdict in favor of the plaintiff for $50,000.00. The trial court approved the verdict and entered final judgment thereon. The defendant was granted this writ of error.

The collision occurred at approximately 7:30 a. m. on September 19, 1962, on Route 744 in Halifax County. Route 744 runs generally east and west and is a paved highway consisting of two lanes, divided by double solid lines at the scene of the accident. The weather was clear, and the roadway was dry on the morning of the accident.

According to her testimony at both trials, the plaintiff was proceeding in a westerly direction on Route 744 enroute to her place of em-

ployment in South Boston. As her automobile rounded a curve in the highway, she saw the defendant's pickup truck approaching from the opposite direction. The truck crossed the center line of the highway and got "plumb on [the plaintiff's] side of the road." The plaintiff stated that she "could not go around [the defendant] on the right" because a "bank was there," so she "started to cut to the left." At that moment, the plaintiff saw "the truck coming back fast like she cut it back to her side of the road." The plaintiff said she then "cut mine hard back to the right to keep from hitting head on." The left front of the defendant's pickup truck collided with the left side of the plaintiff's automobile. The plaintiff was rendered unconscious by the impact and did not regain consciousness until she was in the hospital.

The defendant testified at both trials that she was proceeding in an easterly direction on Route 744, with her thirteen-month-old son lying on the seat beside her "nursing a bottle." The defendant stated that she could not remember anything about the accident; but that when she neared the point where the collision occurred, she was on her proper side of the road. The defendant and her child were injured in the accident and hospitalized. The defendant did not regain "complete consciousness" until she was in the hospital "sitting on a stool beside a table they had [her] son on."

The state trooper who investigated the accident found the plaintiff's automobile "sitting at approximately a forty-five degree angle in the west bound lane" and the defendant's pickup truck "sitting in the east-bound lane." The plaintiff's automobile left "skid marks which started in the west bound lane and veered over to the center of the highway sort of on the lines and veered back over towards the right shoulder of the highway." There were no skid marks left by the defendant's pickup truck.

[1] The verdict at the first trial was returned on September 26, 1964, and, as has been noted, was adverse to the plaintiff. According to the affidavits filed by the plaintiff in support of her motion for a new trial, the day after the verdict was returned, the plaintiff's husband, Pete Whitlow, contacted Thomas Gravitt; and, as a result, affidavits were secured from him and his cousin, Clayton Gravitt, which stated that they were among the first persons to arrive on the scene of the accident.

The Gravitt cousins further stated in their affidavits that when they arrived on the scene, they observed the plaintiff "lying half in and half out of the automobile." They "slid her back on the front seat of

the automobile." Thomas then went to the pickup truck and saw the defendant "walking around with a baby in her arms." According to Thomas, the defendant made the following statement which is the focal point of the present controversy:

"The baby fell off the seat, and I reached over to pick up the baby, and when I did I pulled the truck over on the wrong side of the road."

Clayton Gravitt requested a bystander to call for an ambulance, and he and Thomas departed the scene of the accident before the police arrived.

In affidavits made by the plaintiff and her counsel, it was asserted that following the accident there were rumors circulated that the defendant had made the above-quoted statement. Acting upon the rumors, the plaintiff and her counsel attempted, without success, to determine the identity of the person to whom the statement had been made.

According to the counter affidavits filed by the defendant, Clayton and Thomas Gravitt resided in the same general area of Halifax County as the plaintiff and her husband, Pete Whitlow. Clayton Gravitt met Pete Whitlow at a store near their homes sometime following the accident and prior to the trial on November 5, 1962, of criminal charges arising from the accident. Gravitt told Whitlow "all he knew about said accident." Whitlow told Gravitt that "he might need him at the trial and, if so, he, Clayton Gravitt, would be summonsed." Gravitt, however, "had never been summonsed to testify."

The rules relating to the disposition of a motion for a new trial on the ground of after-discovered evidence have been considered by this court many times and have been followed with unerring consistency over the years. In the recent case of *Reiber* v. *Duncan*, 206 Va. 657, 663, 145 S. E. 2d 157, Mr. Justice Snead, writing for the court, stated:

"The general principles governing the granting of motions for new trials on the ground of after-discovered evidence are well settled in Virginia. Motions for new trials based on this ground are addressed to the sound discretion of the trial judge and are awarded with great reluctance and with special care and caution. The evidence must (1) appear to have been discovered since the trial; (2) be such that in the exercise of reasonable diligence on the part of the applicant it could not have been secured at the former trial; (3) not be merely cumulative, corroborative or col-

lateral; and (4) be material in its objects, and such as on another trial ought to produce opposite results on the merits. Burks Pleading and Practice, 4 ed., Motions After Verdict, § 324, p. 602."

We focus our attention upon the application of the second of the quoted rules, that is, that a party who seeks a new trial on the ground of after-discovered evidence must show that he used reasonable diligence to secure such evidence before the earlier trial. It is not sufficient merely to say that the evidence could not have been discovered by the use of due diligence. The applicant for a new trial must set forth in affidavits facts showing what his efforts were to obtain the evidence and explaining why he was prevented from securing it. 13 Mich. Jur., New Trials, § 27, pp. 649-650; 39 Am. Jur., New Trial, § 163, p. 170.

[2] If the facts thus stated in the applicant's affidavits are not contradicted, they must be presumed to be true. But where, as here, there are counter affidavits filed by the party opposing the motion for a new trial, it is the duty of the trial court to consider such counter affidavits along with the applicant's affidavits and, from all the facts properly stated, to determine whether the requirements for the granting of a new trial have been met. If the facts support the action of the court in granting a new trial, such action will not be disturbed on appeal. *Stubbs* v. *Cowden*, 179 Va. 190, 198, 18 S. E. 2d 275; *Holmes* v. *Commonwealth*, 156 Va. 963, 969, 157 S. E. 554.

We are of opinion that the action of the trial court is not so supported in this case. The record leaves no doubt that before the first trial the plaintiff knew of the statement attributed to the defendant. In fact, the first thing the plaintiff's counsel did at that trial was to call the defendant as an adverse witness and to ask her if she had not told "someone" after the accident that her "thirteen-months-old child fell off the seat" causing her to lose control of her vehicle.

With such beforehand knowledge, the plaintiff was under a heavy burden, in supporting her motion for a new trial, to show that her efforts were full and complete in attempting to locate the person to whom the statement had been made. It was incumbent upon her to explain why it was impossible in the two years between the accident and the first trial to discover that it was Thomas Gravitt to whom the statement had been made when he was located approximately twenty-four hours after she received the unfavorable verdict from the jury.

In determining whether the plaintiff met the burden imposed upon

her, we are struck more by what she failed to present in support of her motion for a new trial than what she, in fact, did present. Although, in her brief, she relies heavily upon an apparently unsuccessful "diligent search" conducted by the investigating state trooper to determine the identity of the person to whom the statement had been made, she did not, strangely enough, secure an affidavit from the trooper. It is not known, therefore, what the trooper did, what he discovered, or what he failed to discover.

Again, although in their affidavits the plaintiff and her counsel denied that they "knew that Thomas Gravitt was at the scene of the accident until sometime after the trial," there was no denial that they knew that Clayton Gravitt was among those first at the scene; that Clayton had been contacted by the plaintiff's husband, Pete Whitlow, as a possible witness within two months of the date of the accident; or that Clayton had told Whitlow "all he knew about said accident."

But strangest of all, there was no affidavit secured from the plaintiff's husband as to his knowledge of the situation before the first trial or his activities immediately following the trial which resulted in the ready discovery of Thomas Gravitt as the person to whom the defendant had made the statement. If, as the counter affidavits stated, Clayton Gravitt had told Pete Whitlow before the trial "all he knew about said accident," that conceivably included the fact that Thomas Gravitt was one of the first persons to arrive on the scene of the accident. If that was not the case, it was surely an important item to negate. And if the husband's quick discovery of Thomas Gravitt after the trial resulted from nothing more than a stroke of investigative luck, a short affidavit stating what actually occurred would have dispelled the air of suspicion which necessarily lingers over the post-trial activities of Pete Whitlow.

The plaintiff argues, however, that her husband is not the plaintiff in the case and that what he may have known before the first trial was not imputable to her or her counsel. That may be so, but it merely begs the question and ignores the husband's obviously important role in investigating the accident. The question is whether the plaintiff used due diligence to discover the identity of the person who could testify concerning the defendant's statement. The simple answer to that question is that, by the exercise of due diligence, the plaintiff and her counsel could have learned from the husband that Clayton was a possible witness and from Clayton, in turn, that Thomas might have information helpful to the case.

It is inconceivable, of course, that the husband did not voluntarily relay to the plaintiff and her counsel all information he had secured concerning the accident. Be that as it may, the apparent failure of the plaintiff and her counsel to elicit from the husband such knowledge as he had, which would inevitably have led them to Thomas Gravitt, displays a lack of due diligence on their part.

[3] The plaintiff further argues that she should not be held to the rigid requirements of the rules ordinarily applicable to the granting of new trials, but is entitled to the benefit of the exception thereto recognized in the case of *Cab Association* v. *LaTouche*, 197 Va. 367, 376, 377, 89 S. E. 2d 320. In that case, we held that the exacting requirements imposed upon a party moving for a new trial are "somewhat relaxed" where the after-discovered evidence shows that a "party's own evidence, or that of his principal witness, upon a material point, is fabricated, perjured or mistaken."

The plaintiff says that she is entitled to this exception because her after-discovered evidence showed that the defendant's own evidence, upon a material point, was fabricated, perjured, or mistaken in that:

"(a) It showed that she did not in fact suffer the retrograde amnesia that she tried to hide behind, but instead clearly remembered the details of the accident.

"(b) It showed that the defendant veered sharply to her left because of the baby's falling from the seat, although on the witness stand her testimony strongly indicated the contrary."

The after-discovered evidence fell far short of the goal for which the plaintiff contends. From the time she was interrogated by the state trooper in the hospital until she left the witness stand at the second trial, the defendant consistently maintained that she had no memory of the details of the accident, that she could not tell how it occurred, and that she did not even remember seeing the plaintiff's automobile on the highway. Neither the after-discovered evidence nor any other evidence showed that she "clearly remembered the details of the accident."

The defendant was not asked at the first trial whether her pickup truck had veered into or entered the plaintiff's lane of travel, and she gave no testimony on that point. On the crucial question of whether she had made the statement, upon the basis of which the new trial was later granted, that she lost control of the vehicle because the child fell off the seat, the defendant merely said, "I don't

remember telling anyone that." And, although she insisted that the child did not fall off the seat, she explained that she knew that to be a fact "because he was lying . . . in the seat . . . the last thing I remember." No charge of fabrication, perjury, or mistake can be sustained under these circumstances.

[4] This brings us to an assignment of cross-error filed by the plaintiff. She says that the trial court erred at the first trial by refusing to permit her to question the defendant as to whether the latter had entered a plea of guilty to a charge of failing to yield the right-of-way arising out of the accident, and by refusing to permit her to show by the state trooper that the defendant had entered such a plea.

· The situation arose in this manner: The defendant, while on the stand as an adverse witness, was asked by the plaintiff's counsel, "Isn't it true on November 5, 1962 you pled guilty to. . . ." The defendant broke in and said, "No." Upon objection by the defendant's counsel that "she didn't plead guilty and that's not a fair question," the court dismissed the jury from the courtroom.

In the discussion which then ensued, it was disclosed that the records of the county court showed that the defendant was convicted of the charge, but did not show what plea she entered thereto. The plaintiff's counsel told the court that the state trooper "was in court and remembered she entered a plea of guilty." The court refused the plaintiff's counsel's request to ask the trooper what plea the defendant had entered.

The court, in ruling on the admissibility of the evidence proffered by the plaintiff, stated, "If the records don't show it, we will have to exclude it." We adopt the trial court's view, and that disposes of the assignment of cross-error.

We hold that it was error to grant a new trial in this case on the ground of after-discovered evidence. Accordingly, the judgment of the trial court will be reversed, the second verdict set aside, the first verdict reinstated, and final judgment entered in favor of the defendant.

*Reversed and final judgment.*

BUCHANAN, J., dissenting.

In *Independent Cab Association* v. *LaTouche*, 197 Va. 367, 377, 89 S.E.2d 320, 327, we quoted with approval these statements in Burks Pleading and Practice, 4th ed., § 324, pp. 601, 602, 603:

" "* * Applications for new trials [for after-discovered evidence]

are addressed to the sound discretion of the court, and are based on the ground that there has not been a fair trial on the merits.' "

I do not question the further statement that a new trial for after-discovered evidence is granted with great reluctance and with special care and caution, and that in order to justify a new trial it must be shown that the after-discovered evidence could not have been discovered before the trial by the exercise of due diligence; but it should also be borne in mind, as quoted in *LaTouche*, that:

" '* * The real object to be attained in granting a new trial is to prevent an erroneous judgment from becoming final. "Where in the light of after-discovered evidence, grave doubt is entertained as to the correctness of the verdict, and it seems probable that if the newly-discovered evidence had been before the jury a different verdict would have been reached on the merits, the verdict should be set aside." * *' "

Here it is more than probable, it is demonstrated, that if the newly-discovered evidence had been before the jury on the first trial a different verdict would have been reached on the merits.

Thomas Gravitt testified on the second trial that at the scene of the accident defendant said her baby fell off the seat and when she reached over to pick up the baby she pulled her truck over to the plaintiff's side of the road. He stated in his affidavit, made after the first trial, that he did not know either of these ladies. He left the scene, he said, before the trooper or the ambulance arrived and he did not remember telling anybody about his being at the scene of the accident until plaintiff's husband came to see him on Sunday night after the verdict on Saturday.

Plaintiff stated in her affidavit that she did not employ counsel until about a year after the accident; that she heard that the defendant had made the statement to somebody but she was unable to confirm this; and her counsel made affidavit that he investigated the report but was unable to find out to whom such statement had been made.

The court now holds that the plaintiff and her counsel did not use reasonable diligence to discover this new evidence prior to the first trial, and hence the court erred in setting aside the first verdict on that ground.

I think there is room for difference of opinion on that question. The trial judge, who heard the evidence twice, was convinced this after-discovered evidence was admissible and I would accept his decision about it.

I disagree more decidedly with the court's conclusion that it is proper to dispose of plaintiff's assignment of cross-error by merely adopting the trial court's view about it. In my opinion, that view was wrong. The evidence offered by the plaintiff was that in a trial in the County Court on a warrant charging the defendant with failing to yield the right of way, the defendant entered a plea of guilty. The defendant denied that she did so, but the State trooper who investigated the accident testified, out of the presence of the jury, that he was present at the trial in the County Court and that the defendant did plead guilty to that charge. This evidence was admissible as an admission on the part of the defendant and was important evidence for the plaintiff in view of the plaintiff's testimony as to how the accident happened and the testimony of the defendant that she did not remember anything about the accident and did not know how it happened.

The plaintiff was entitled to a fair trial and to place before the jury admissible evidence in support of her case. The rejection of this testimony was error sufficient, in my opinion, to require the verdict in the first trial to be set aside without the support of the after-discovered evidence.