## Richmond

WILLIE C. BAGLEY v. WILLIAM BEVERLY WEAVER, ADMINISTRATOR
OF THE ESTATE OF RICHARD W. BAGLEY, DECEASED.

April 26, 1971.

Record No. 7363.

Present, Snead, C.J., I'Anson, Gordon, Harrison, Cochran and Harman, JJ.

*Aldine J. Coffman, Jr.* (*Coffman & Coffman*, on brief), for plaintiff in error.

*William V. Hoyle*, for defendant in error.

HARRISON, J., delivered the opinion of the court.

Richard W. Bagley filed his motion for judgment against Willie C. Bagley, defendant, to recover damages for personal injuries sustained in an automobile accident allegedly caused by the gross negligence of defendant.

Subsequently Richard W. Bagley died of natural causes unrelated to the accident, and this action was revived in the name of William Beverly Weaver, his administrator. We refer to the parties as plaintiff and defendant, the positions they occupied in the lower court.

Defendant filed responsive pleadings denying liability. The jury returned a verdict for the administrator in the sum of $15,000 and expressly found that defendant was guilty of gross negligence. Judgment was entered by the lower court, and we granted defendant a writ of error.

On July 13, 1968 at about 10:40 P. M., Willie C. Bagley was driving a Ford car in a northerly direction on Route 10 in the town of Smithfield, Virginia. Richard W. Bagley, his uncle, was his guest. The two men left their homes in Newport News on that morning for the purpose of visiting relatives in Nansemond and Isle of Wight Counties. Defendant testified that some 10 to 15 feet before reaching a bridge on Highway 10 which crosses Pagan Creek he hit a "hump" in the highway and when the car came down it "flipped over" on the side of the bridge, went out of control and wrecked. No other vehicle was involved.

M. A. Cochran, Chief of Police for Smithfield, arrived at the scene within five minutes after the accident occurred and found the automobile lying on its top. The only person then present was the decedent, Richard W. Bagley, who was lying in the road. Bagley was sent to Riverside Hospital in Newport News and thereafter transferred to the Veterans Administration Center, Hampton, Virginia. The officer testified that the speed limit at the point of the accident was 40 miles per hour and that a sign so indicating was located one-tenth of a mile from the bridge.

Cochran described the bridge as 487 feet long, the driving portion thereof 23 feet wide, with a 5-foot pedestrian sidewalk. He testified that the car hit an abutment of the bridge, knocked off some concrete and then traveled a distance of 362 feet "end over end" before coming to rest. This officer observed that "the only place you could see where it hit was 25 or 30 feet apart", and that there were no skid or tire marks on the bridge or leading up to the point where defendant hit the abutment. He determined the point of first impact "[b]y

the debris and the part of the car at the abutment. . . . The chrome and stuff".

Defendant had just emerged from a 30 mile per hour speed zone in Smithfield to one that permitted a speed of 40 miles per hour. The jury could have found from defendant's admission and other evidence that his speed was from 50 to 55 miles per hour or greater and that he failed to observe the 40 mile speed limit sign or the "bump" or "hump" in the road, if such defect existed. Other witnesses testified that there was no defect in the road. Admittedly defendant lost control of his car. Officer Cochran testified that he overheard defendant make a statement in the police station on November 8, 1968 to the effect "that he had gone to sleep". Defendant admitted being tired but denied that he went to sleep. He left the scene of the accident before the officer arrived.

In addition, defendant voluntarily entered a plea of guilty to operating the car recklessly at the time of the accident. We conclude from the record before us that the question of gross negligence was a proper one to have been submitted to the jury and that their verdict is supported by credible evidence.

Defendant assigned error to the action of the trial court in allowing evidence to be admitted that he entered a plea of guilty to a charge of reckless driving growing out of the accident. The record shows that the defendant appeared in person and voluntarily submitted the plea. Under these circumstances we hold the evidence to be admissible. This is consistent with our decision in *Fulcher* v. *Whitlow*, 208 Va. 34, 155 S. E. 2d 362 (1967), where the lower court refused plaintiff's request that she be allowed to ask a trooper what plea the defendant had entered. The records of the county court showed only that the defendant was convicted. They did not show what plea she entered. There we said:

"The court, in ruling on the admissibility of the evidence proffered by the plaintiff, stated, 'If the records don't show it, we will have to exclude it.' We adopt the trial court's view, and that disposes of the assignment of cross-error." 208 Va. at 41, 155 S. E. 2d at 368.[1]

Defendant also contends that plaintiff was not entitled to re-

---

[1] An Act of the 1970 General Assembly (Code § 8-267.1) now provides that in any civil action, a plea of guilty in a criminal prosecution arising out of the same occurrence may be shown by the criminal court's records or by evidence.

cover for any physical pain and mental anguish suffered by his decedent.

Prior to 1964 Code § 8-628.1 provided, in part, as follows:

"No cause of action for injuries to person or property shall be lost because of the death of the person liable for the injury. No cause of action for injuries to person or property shall be lost because of the death of the person in whose favor the cause of action existed, *provided, however, in such action no recovery can be had for mental anguish, pain or* suffering. . . ." (Italics supplied.)

In 1964 the General Assembly of Virginia deleted the italicized portion of the statute and substituted "provided said person's subsequent death was not occasioned by the acts giving rise to such cause of action".

The cause of action which Code § 8-628.1 provides *shall not be lost* is not a new cause. It is the same cause of action which an injured person was prosecuting or could have prosecuted prior to his death from an unrelated cause. In view of the express elimination of the language which formerly excluded a recovery for mental anguish, pain and suffering "[t]he same kind of evidence would be necessary and admissible to support the action that would be proper if the injured person himself were suing. There would be the same elements of damage for the consideration of the jury in assessing the damages. The evidence would mainly relate to and the damages be for the *physical and mental suffering of the deceased* and the injuries and loss generally sustained by him and his estate". (Italics supplied.) *Anderson* v. *Hygeia Hotel Co.*, 92 Va. 687, 692-93, 24 S. E. 269, 271 (1896).

It should be pointed out that the limit of recovery in an action under the Death by Wrongful Act (Code § 8-633 et seq.) is different from that in the action preserved by Code § 8-628.1. In one the amount of the recovery is limited by statute, is for the benefit of certain designated beneficiaries and is free from debts and liabilities. In the other the limit is the amount of damages that can be proved, is an asset of the decedent's estate and is subject to the payment of his debts.

We conclude that it was the intent of the General Assembly of 1964, in amending Code § 8-628.1, to permit a recovery for mental anguish, pain and suffering in causes of action preserved by that section.

■ We have considered the plaintiff's 13 assignments of error to the action of the trial court in granting and refusing certain instructions. The court properly refused instructions on sudden emergency and contributory negligence for there was no evidence to support them. The instruction that as a matter of law plaintiff was not guilty of contributory negligence was properly given. While several of the instructions detailing the duties of the defendant are not without objection, we find that under the circumstances of this case the error therein is harmless. In some instances the defect in the instruction was not fully pointed out to the court below.

The trial court granted three instructions defining gross negligence, and the distinction between it and ordinary negligence was given. It instructed that for the plaintiff to recover the defendant's gross negligence must have been established by a preponderance of the evidence and been the proximate cause of the accident. The jury understood that proof of gross negligence was necessary as evidenced by the wording of the verdict it returned.

The instructions that were granted by the court were adequate to submit to the jury the issues that were involved in the case. However, it is noted that the trial judge was required to consider 33 instructions. He granted 18, denied 11 and 4 were withdrawn. Some of the instructions are repetitious. Again we take the opportunity to condemn the multiplication of instructions and the requesting and granting of those that are repetitious. Such action can only confuse and mislead the jury and tends to provoke error.

We find no reversible error in the other assignments made by the defendant.

*Affirmed.*