## CIRCUIT COURT OF FAIRFAX COUNTY

Morry B. Markowitz et al.

v.

Re/Max Preferred Properties et al.

May 21, 1997

Case No. (Law) 143782

BY JUDGE STANLEY P. KLEIN

This matter remains before the Court for a ruling on Defendant Francis Dove's Motion to Set Aside the Verdict or in the Alternative for Remittitur. Dove claims (1) that Virginia's common law scheme for awarding punitive damages violates constitutional due process principles and (2) that the jury's punitive damage award against him violates due process. After an independent review of the evidence presented at trial and the applicable federal and Virginia authorities, the Court finds that the punitive damage award against Dove violates neither constitutional nor Virginia common law principles. Therefore, Dove's motion is denied.

### I. *Procedural History*

On July 26, 1993, Plaintiffs Morry B. Markowitz and Valery Gilbert (collectively "Markowitz") executed a proposed written sales contract to purchase property located at 4319 Roberts Avenue, Annandale, Virginia, for $270,000.00. The contract was presented to them by Dove who represented that he was an agent for Defendant Jack Griffin, d/b/a Re/Max Preferred Properties (Griffin). Some time thereafter Dove presented Plaintiffs with what

purported to be a fully executed contract signed by an authorized representative of Citicorp, the seller. The signature was a forgery. Plaintiffs subsequently tendered to Dove two checks totaling $40,000.00 for the downpayment under the contract. Dove deposited those funds in an account under his sole control. Plaintiffs proceeded to make arrangements to close on the sale of the property and expended $300.00 for a house inspector and $2,076.00 for fees to a mortgage company.

Pursuant to the contract, certain work was to be performed on the residence prior to closing. Markowitz periodically checked on the work and became concerned when it was clear that it would not be completed prior to the scheduled settlement date in late August, 1993. On one occasion when Markowitz came to the residence, a real estate agent was showing the property to a prospective purchaser and advised Markowitz that the property was still listed for sale with the multiple listing service. Markowitz contacted Dove who advised that the listing was the result of a computer error. Eventually, Markowitz asked Dove to provide him with the name of the contact person at Citicorp and attempted to reach that person. He was unable to do so.

Upon further investigation, Markowitz learned in mid-September, 1993, that Citicorp had never executed a contract with him and in fact had sold the property to someone else. Markowitz demanded his money back from Dove. After Dove bounced a $20,000.00 check to Markowitz, Markowitz was eventually able to secure repayment of the $40,000.00 advanced by Plaintiffs.

On August 3, 1995, Markowitz and Gilbert filed a four count Motion for Judgment against Dove and Griffin alleging fraud, negligent misrepresentation, negligence, and gross negligence. During a multi-day jury trial, evidence was presented that Dove was presently in the penitentiary for acts of fraud unrelated to this transaction. The case went to the jury solely on the fraud count, and verdicts were returned in favor of the Plaintiffs against Griffin for $500.00 compensatory damages and against Dove for $5,500.00 compensatory damages and $100,000.00 punitive damages.

The jury's compensatory damage award of $5,500.00 against Dove evidenced a misunderstanding of the effect of instruction number 24 on the evidence of damages. Based upon the evidence and the rulings of the Court during trial, the maximum potential amount of compensatory damages to which Plaintiffs were entitled was $2,376.00.

Moreover, "[i]n the absence of statutory authorization, no apportionment of compensatory damages may be made between joint tortfeasors, and in actions against two or more persons for a single tort, it is improper to return two verdicts for different sums against different defendants ...." *Freeman v. Sproles*, 204 Va. 353, 357 (1963). As the jury awarded Markowitz

compensatory damages of only $500.00 against Griffin, the Court could not allow the different compensatory damage awards to stand.

At oral argument on the propriety of the compensatory damage awards, the Court rejected Re/Max's Motion to Set Aside the Verdict, and counsel for Griffin then withdrew any attack on the amount of the award against him. Counsel for Plaintiffs then agreed to a reduction of the compensatory damage award against Dove to $500.00, so that the verdict would not violate the holding in *Freeman*.

## II. *The Constitutional Framework for Assessing Punitive Damage Awards*

Dove contends that the Virginia scheme for assessing an award of punitive damages is unconstitutional. As the Virginia Supreme Court has not yet addressed this issue, this Court must analyze the constitutionality of the Virginia scheme in light of the controlling case law set forth in recent decisions of the United States Supreme Court.

In *Pacific Mutual Life Ins. v. Haslip*, 499 U.S. 1 (1991), the Supreme Court considered a due process challenge to Alabama's common law scheme for assessing punitive damages. Alabama's common law scheme left the determination of the quantum of punitive damages to the discretion of the jury. This determination was then subject to review by the trial and appellate courts to ensure that the award comported with a standard of reasonableness. *Id.* at 15. In affirming the constitutionality of Alabama's common law method, the Supreme Court stated:

> It is a well-established principle of the common law that in … all actions on the case for torts, a jury may inflict … punitive … damages upon a defendant … if repeated juridical decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument.

*Haslip*, 499 U.S. at 16 (quoting *Day v. Woodworth*, 13 How. 363, 14 L. Ed. 181 (1852)). In finding the Alabama scheme constitutional, the court rejected Pacific Mutual's argument that the Constitution requires a standard of proof of at least clear and convincing evidence to support an award of punitive damages. "We are not persuaded … that the Due Process Clause requires that much. We feel that the lesser standard … when buttressed … by procedural and substantive protections … is constitutionally sufficient." *Id.* at 22, n. 11.

While acknowledging the long history that the common law scheme has enjoyed in our jurisprudence, the Court explicitly rejected the notion that the pedigree of the practice acts to insulate it from constitutional challenge. Declaring that unlimited jury discretion can work to violate a defendant's right of due process under the Fourteenth Amendment, the Court rejected a "mathematical bright line" approach for discerning constitutionally acceptable and unacceptable jury awards. *Id.* at 18. Instead, the Court emphasized that "general concerns of reasonableness and adequate guidance from the court when a case is tried to a jury properly enter into the constitutional calculus." *Id.* The *Haslip* Court then reviewed and upheld the sufficiency of the punitive damage instruction given to the jury and the adequacy and substance of Alabama's post-trial review procedures.

Defendant Dove urges this Court to conduct its own independent review of the punitive damage award against him and argues that it is the duty of a judge to act within his legal authority to correct any injustice. This Court agrees and relies on *Haslip* and its progeny for guidance in making its review.

## A. *Jury Instructions*

### 1. *Haslip*

The instruction given by the trial court in *Haslip*[1] advised the jury that the purpose of punitive damages was not to compensate the plaintiff but rather to punish the defendant. It further informed them that punitive damages serve as a means of deterring future similar conduct and explained that the imposition of punitive damages was not mandatory. In addition, the instruction charged the jury with considering the character and the degree of the wrong and the necessity of providing a disincentive for its reoccurrence. In finding that this instruction was constitutionally sufficient in ensuring compliance with the defendant's right of due process, the Supreme Court noted that the instruction confined the award of punitive damages within the parameters of punishment and deterrence. In so doing, the Court found that the instruction "reasonably accommodated [the defendant's] interest in rational decision making and Alabama's interest in individualized meaningful assessment of appropriate deterrence and retribution." *Id.* at 20. Finally, the Court concluded that "as long as discretion is exercised within reasonable constraints, due process is satisfied." *Id.*

---

[1] The *Haslip* jury instruction is reproduced in footnote 1 of the opinion. *Haslip*, 499 U.S. at 8, n. 1.

## 2. *Virginia Model Jury Instruction 9.080*

Dove asserts that the punitive damage instruction granted in this case, Virginia Model Jury Instruction 9.080, afforded the jury unbridled discretion in awarding punitive damages, thereby violating his right of due process. The instruction reads as follows:

> If you find that the plaintiffs are entitled to be compensated for their damages, and if you further believe by the greater weight of the evidence that the defendants acted with actual malice toward the plaintiffs or acted under circumstances amounting to a willful and wanton disregard of the plaintiffs' rights, then you may also award punitive damages to the plaintiff to punish the defendants for their actions and to serve as an example to prevent others from acting in a similar way.

Instruction No. 25; Virginia Model Jury Instruction No. 9.080 (as modified).

Like Alabama, Virginia employs the common law method of determining punitive damages. *See, e.g., Hamilton Devel. Co. v. Broad Rock Club, Inc.*, 248 Va. 40 (1994) (declaring that no fixed standard exists in Virginia for measuring punitive damages and the amount awarded is within factfinder's discretion); *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 145 (1962) (explaining that, in general, jury has discretion to fix damages in civil cases where no rule for measuring damages exists). Instruction 9.080 "enlighten[s] the jury as to the nature and purpose, identifie[s] the damages as punishment for civil wrongdoing ... and explain[s] that their imposition was not compulsory." *Haslip*, 499 U.S. at 19.

Dove nonetheless argues that the Virginia instruction is constitutionally infirm and relies on *Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992), for the proposition that due process requires that juries receive instructions limiting their discretion in fixing the amount of punitive damage awards. Specifically, Dove contends that the instruction violated the mandates of *Haslip* because it failed to place any meaningful restraint on the amount the jury could award. Dove contends that the jury should have been instructed to consider the degree of proportionality between the amount awarded and the actual harm caused, the defendant's financial position, and the fact of Dove's imprisonment for "substantially similar offenses" before making an award.

Dove's only proposed instruction setting forth any of these factors misstated the law under *Haslip* and its progeny. Specifically, paragraph 1 of Proposed

Instruction ZZZ referred only to the actual harm caused without allowing the jury to also consider the potential harm of Dove's conduct. With respect to paragraph 2 of Dove's instruction, there was no evidence at trial of any criminal or civil penalties against Dove for the specific conduct at issue in this case.

Dove's reliance on *Hugo's Skateway* is misplaced. In *Hugo's Skateway*, the Fourth Circuit, applying Virginia law, vacated the punitive damage award and ordered a new trial on the issue of damages. *Hugo's Skateway*, 974 F.2d at 1418. Dove correctly asserts that the holding in *Hugo's Skateway* requires that juries receive limiting instructions before beginning deliberation as to punitive damages. However, this holding was expressly premised on the fact that *Hugo's Skateway* was a matter decided in a federal court. Citing both the *Erie* doctrine and the Seventh Amendment,[2] the Court noted:

> Although a *state* court in assessing punitive damages may apportion fact-finding responsibilities between judge and jury, we have held that in a *federal* court the jury performs those functions. Under these principles a district court applying state law may look beyond the state-formulated jury instructions to the state's post-verdict review criteria when incorporating into its instructions the state's substantive punitive damages law ....

*Id.* at 1416 (citations omitted) (emphasis in original). The Fourth Circuit noted that states are not constitutionally obligated to give the same degree of deference to jury decisions as are federal courts. *Hugo's Skateway*, 974 F.2d at 1416, n. 8. Dove has, therefore, overstated the importance of the holding in *Hugo's Skateway* to the issues before this Court. Virginia Model Jury Instruction 9.080, when given in the context of proceedings in a Virginia state court, clearly complies with the constitutional dictates of *Haslip*.

However, as the *Haslip* opinion indicates, the proper constitutional inquiry does not end with an analysis of the jury instruction. *Haslip*, 499 U.S. at 16. Rather, the entire Virginia Scheme, both trial and post-trial, must be examined to determine whether Virginia's procedural and substantive safeguards are in compliance with the due process mandates of the Fourteenth Amendment.

---

[2]  The *Erie* doctrine requires that federal courts in diversity actions apply state law in a manner that does not yield results that are materially different from those attained in state courts. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### III. *Post-Trial Review of Punitive Damage Awards*

In examining Alabama's post-trial review procedures for compliance with the Fourteenth Amendment, the Court in *Haslip* approvingly noted the Alabama standards of "reflect[ing] in the record the reasons for interfering with a jury verdict, or refusing to do so, on the grounds of excessiveness of the damages." *Id.* at 20 (citations omitted). The Alabama scheme also allowed for additional review by the state's appellate courts.

The importance of post-trial review mechanisms in ensuring compliance with the Fourteenth Amendment was later underscored in *Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994), where the Supreme Court declared the Oregon scheme for awarding punitive damages unconstitutional. Unlike the Alabama scheme, Oregon allowed a reviewing court to set aside a punitive damage award only if there was *no* evidence to support the award. The Supreme Court rejected the argument that this standard withstood constitutional scrutiny, opining that the scheme "ensures only that there is evidence to support *some* punitive damages, not that there is evidence to support the actual amount awarded ... Oregon ... provides no assurance that those whose conduct is sanctionable by punitive damages are not subjected to punitive damage awards of arbitrary amounts." *Id.* at 429 (emphasis in original).

### A. *The Virginia Scheme for Post-Trial Review of Punitive Damage Awards*

Unlike the Oregon system, the Virginia scheme places an affirmative duty upon trial court judges to set aside a punitive damage award when the amount assessed "is so excessive as to shock the conscience *and* to create the impression that the jury has been influenced by passion, corruption, or prejudice, *or* has misconceived the facts or the law, *or* if the award is so out of proportion to the injuries suffered that it is not the product of a fair and impartial jury ...." *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 146 (1961) (citations omitted) (emphasis added). Consistent with the constitutional requirement enunciated in *Honda Motor Co.*, the Virginia scheme in fact permits the trial court to consider the size of the jury's award in conducting its post-trial review. In addition, Virginia precedent allows for appellate review of jury awards. *See, e.g., Williams v. Garraghty*, 249 Va. 224, *cert. denied*, 116 S. Ct. 66 (1995); *Hamilton Devel. Co. v. Broad Rock Club, Inc.*, 248 Va. 40 (1994); *Modaber v. Kelly*, 232 Va. 60 (1986); *The Gazette Inc. v. Harris*, 229 Va. 1 (1985). This post-trial review at the trial and appellate court levels ensures that the Virginia scheme satisfies the post-verdict review requirements set out in *Haslip*.

B. *The Scope of Review*

Consistent with this Court's analysis of the appropriate post-trial review to be undertaken under Virginia law, Dove asks this Court to conduct an independent review of the punitive damage award by the jury. Dove contends that "each case must be considered on its own facts and circumstances, and, whether the award is inadequate or excessive is a legal question addressed to the sound discretion of the court ...." *Stubbs v. Cowden*, 179 Va. 190 (1942). Based upon the decision in *Stubbs*, Dove urges this Court to review and consider not only the evidence presented to the jury at trial but also evidence tendered for the first time post-trial. The Court rejects Dove's request. Nothing in *Stubbs* indicates that a court may look beyond the scope of the trial evidence in reviewing a punitive damage award to determine whether the award is excessive. A fair reading of *Stubbs* indicates that in reviewing the amount of the award, the Court should limit its review to evidence presented at trial. *Id.* at 199-201.

While the Virginia Supreme Court may not have squarely addressed this issue in *Stubbs*, there is support both in case law and logic for the proposition that the scope of review should be limited to the evidence introduced at trial. In *Hamilton Devel. Co. v. Broad Rock Club, Inc.*, 248 Va. 40 (1994), the Virginia Supreme Court reviewed a challenge to a punitive damage award on the ground that it was excessive. In upholding the award, the Court noted, with disapproval, that the defendant "recited facts that are not in the record." *Hamilton*, 248 Va. at 45. Other Virginia case law also supports limiting the scope of review to the evidence at trial. *See Bassett Furniture v. McReynolds*, 216 Va. 897, 912 (1976) (finding remittitur proper when scope of review was limited to factors in evidence); *Caldwell v. Seaboard Sys. R.R.*, 238 Va. 148, 157 (1989) (upholding remittitur based on evidentiary record); *see also Smithey v. Sinclair Refining Co.*, 203 Va. 142 (1981) (declaring that proper inquiry requires that award be sustained by evidence).

Defendant correctly asserts that the Supreme Court's opinion in *Haslip* is silent as to the proper scope of the post-trial review. However, in reviewing *Haslip* and its progeny, this Court has found no instance in which evidence not introduced at trial was considered in evaluating whether a punitive damage award was excessive. Absent case law or other legal authority to the contrary, it would be logically unsound to assume that a court may look beyond the evidence at trial in making its review. Dove's allegation that the jury was influenced by passion or prejudice is facially at odds with his assertion that a judge may look beyond the evidence presented to the jury in assessing the

validity of this contention. Consistent with both logic and the jurisprudence of the Virginia Supreme Court, this Court finds that the proper scope of post-trial review encompasses only the evidence introduced at trial.

## IV. *Substantive Due Process Analysis*

### A. *Haslip and Its Progeny*

An award of punitive damages is lawfully premised on a state's desire to further its interest in punishing unlawful conduct and deterring future similar conduct. *See e.g., BMW of North America v. Gore*, 116 S. Ct. 1589, 1595 (1996). When a gross disparity exists between the award and the furtherance of these state interests, the award is deemed arbitrary, thereby violating due process. A substantive due process inquiry is essential in determining whether an award of punitive damages is so grossly disproportionate to the furtherance of the state's interest as to render the award arbitrary. *Id.*

In determining that the Alabama scheme afforded defendants sufficient protection against arbitrary awards, the *Haslip* Court examined the substantive provisions of Alabama's punitive damage scheme. That scheme considered: (1) the existence of a reasonable relationship between the award and both the actual harm and the harm likely to result from the defendant's conduct; (2) the degree of reprehensibility of the defendant's conduct, including the duration of the conduct, the defendant's awareness of the conduct, attempts to conceal the conduct, and whether and how often such conduct occurred in the past; (3) the profitability of the conduct to the defendant as measured against the desirability of defeating the same and imposing a loss on the defendant; (4) the financial position of the defendant; (5) the costs of litigation; and (6) the imposition of criminal and civil sanctions on the defendant resulting from the same conduct. *Haslip*, 499 U.S. at 21-22.

Since the *Haslip* decision, the United States Supreme Court has had occasion to further consider a number of constitutional challenges to the size of punitive damage awards. *See BMW of N. Am., Inc. v. Gore*, 116 S. Ct. 1589 (1996); *Honda Motor Co. v. Oberg*, 512 U.S. 415 (1994); *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993). Through these subsequent cases, the scope of permissible factors that may be considered in reviewing a punitive damage award has been expanded. In *TXO*, the Court addressed the issue of proportionality of the compensatory damages to the punitive damages. Eschewing a mathematical bright line approach in determining proportionality, the Court announced that a proper inquiry includes an examination of both the actual and *potential* harm resulting from the defendant's conduct. *TXO*, 509

U.S. at 460. In *BMW*, the Court revisited this issue and stated that "low awards of compensatory damages may properly support a higher ratio ... if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *BMW*, 116 S. Ct. at 1602.

Courts are, of course, free to consider the factors addressed in these Supreme Court cases. However, in reviewing the constitutionality of various state systems for punitive damages, the United States Supreme Court has refrained from superimposing its own list of factors which must be considered in assessing punitive damage awards. Rather, the due process inquiry is limited to whether the substantive law of the state provides for "a sufficiently definite and meaningful constraint on the discretion of ... factfinders in awarding punitive damages." *Haslip*, 499 U.S. at 22. The factors considered in *Haslip* and in the line of cases emanating from *Haslip* are merely illustrative. Thus, no single formula exists for this substantive due process analysis.

## B. *The Virginia Scheme*

The Virginia scheme for assessing punitive damages is constitutionally grounded in the desire to punish and deter unlawful conduct. *See Gertz v. Welch*, 418 U.S. 323, 350 (1974) (declaring that punitive damages are a constitutionally permissible means of furthering states' legitimate interest in punishing and deterring unlawful conduct); *Hugo's Skateway*, 974 F.2d at 1417 (noting that Virginia law supports use of punitive damages as a means of punishment); Virginia Model Jury Instruction 9.080 (informing jury that purpose of punitive damages award is to punish and deter). Furthermore, while the Virginia Supreme Court has not fashioned its own test in light of *Haslip*, the Virginia scheme has always included a post-trial review of relevant factors relating to a punitive damage award both at the trial court and appellate levels. *See Hugo's Skateway*, 974 F.2d at 1417-18; *see, e.g., Stubbs v. Cowden*, 179 Va. 190 (1942) (affirming trial court's setting aside of damage award and order for new trial based on disproportionality); *Tazewell Oil Co. v. United Va. Bank*, 243 Va. 94 (1992) (upholding trial court's limitation of damage award based on double recovery by plaintiff); *The Gazette Inc. v. Harris*, 229 Va. 1 (1985) (setting aside jury award based on disproportionality and defendant's inability to pay). The substantive law of Virginia therefore supports consideration of the following factors in reviewing whether a punitive damage award is grossly excessive: (1) the proportionality between punitive and compensatory damages; (2) whether the award affords double recovery to the plaintiff; and (3) the ability of the defendant to pay. In addition to these

considerations, Virginia courts are free to consider other factors as set forth in *Haslip* and its progeny.

This Court is satisfied that these factors impose a sufficiently definite and meaningful constraint on the discretion of juries in awarding punitive damages so as to ensure compliance with the Due Process Clause of the Fourteenth Amendment. Moreover, meaningful post-trial review can and does occur in Virginia to prevent the imposition of arbitrary awards. The Virginia scheme is therefore not offensive to any notion of substantive due process.

## C. *The Virginia Scheme Applied to the Evidence Herein*

### 1. *Proportionality*

After a thorough review of the evidence at trial, this Court rejects Dove's argument that the jury's punitive damage award of $100,000.00 against him was so grossly disproportionate to the harm suffered by the Plaintiffs as to violate due process. Under *Haslip* and *TXO*, it is proper for the Court to consider not only the actual but also the potential harm to the Plaintiffs resulting from Dove's unlawful conduct. *See Haslip*, 499 U.S. at 21; *TXO*, 509 U.S. at 460. There is ample evidence to indicate that but for the persistent efforts of the Plaintiffs, their loss due to Dove's fraudulent conduct would have exceeded $40,000.00. Taking into account this potential harm resulting from Dove's conduct yields a punitive damage ratio of approximately 2.5 times compensatory damages. This ratio falls far short of reaching a standard of gross excessiveness. *See Haslip*, 499 U.S. at 23-24 (holding that punitive damages award which is four times greater than compensatory damages is not unconstitutional); *BMW*, 116 S. Ct. at 1603 (refusing to apply mathematical bright-line approach and suggesting that most awards will pass constitutional muster under grossly excessive standard unless ratio is "breathtaking").

The reprehensibility of the defendant's conduct also figures prominently in the proportionality analysis. *BMW*, 116 S. Ct. at 1599. In determining the degree of reprehensibility of a defendant's conduct, a court may consider whether the conduct contains an element of trickery and deceit and whether the conduct is part of a pattern of similar misconduct. "[E]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Id.* (citing *TXO*, 509 U.S. at 462, n. 28). Upon review of the record, this Court finds that Dove's conduct was indisputably reprehensible. Clearly, Dove engaged in a pattern of malfeasance marked by trickery and deceit when he twice solicited

and received funds from the Plaintiffs totaling $40,000.00 for a contract he knew did not exist.

### 2. *Double Recovery Argument*

Dove argues that the punitive damage award must be set aside or reduced because his incarceration for similar offenses renders the award duplicative. This argument is without merit. A court may consider, as a mitigating factor, the imposition of criminal sanctions resulting from the defendant's conduct as part of its double recovery analysis. *Haslip*, 499 U.S. at 22; *Hugo's Skateway*, 974 F.2d at 1418. However, Dove's imprisonment for similar offenses is not related to the specific conduct leading to this lawsuit by these Plaintiffs. Notwithstanding Dove's imprisonment for similar offenses, the Court finds the imposition of punitive damages in this case bears a reasonable relationship to the punishment required to sanction this defendant and to deter others from similar misconduct. Indeed, to hold otherwise would be to lessen deterrence by limiting the imposition of sanctions once the wrongdoer has been punished for a similar, albeit separate, offense.

### 3. *Ability of Defendant to Pay*

Dove correctly contends that his ability to pay may be a factor to be considered in evaluating the amount of the punitive damage award. While Virginia case law is silent as to which party bears the evidentiary burden of production with respect to a defendant's financial status, the Court finds persuasive the logic of the United States Court of Appeals in *Kunstler v. Britt*, 914 F.2d 505 (4th Cir. 1990). Discussing the allocation of the evidentiary burden with respect to Rule 11 sanctions, the Court of Appeals declared:

> Rule 11 sanctions are analogous to punitive damages … Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden of the parties being sanctioned to come forward with evidence of their financial status.

*Kunstler*, 914 F.2d at 524. It is the tortfeasor himself who has the greatest access to his own financial information. Absent a rule that requires defendants to come forward with evidence of their financial status during trial, defendants would be free to exercise the strategically logical choice of abstaining from

introducing such evidence and then challenging the propriety of any substantial award post-verdict.

Here, other than the testimony that Dove earned over $200,000.00 per year when he had his broker's license, the evidence was conspicuously devoid of any mention of Dove's financial status. This Court declines Dove's request to now grant him affirmative relief based upon his decision not to present any such evidence to the trier of fact at trial.

## V. *Conclusion*

For the reasons set forth in this opinion, the Court finds that the Virginia scheme for assessing punitive damages which was utilized in this case did not deprive Dove of any constitutional rights under the Due Process Clause. Accordingly, Dove's Motion to Set Aside the Verdict or in the Alternative for Remittitur is denied.