## Richmond

### HATTIE GOUGH S. NEWTON, ET AL. v. JOHN ERNEST NEWTON.

January 20, 1958.

Record No. 4730.

Present, All the Justices.

The opinion states the case.

*Robert Whitehead (John B. Boatwright; Whitehead & Marshall,* on brief), for the appellants.

*W. M. Abbitt* and *George Abbitt, Jr.,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This litigation resulted from family disagreements and difficulties in the operation of a motor court at Sprouse's Corner, in Buckingham county, between John Ernest Newton, the appellee, on the one hand, and his wife and her seven sons by a former marriage, the appellants, on the other hand.

Mrs. Newton and her first husband, E. B. Sprouse, opened the motor court in 1932 and it has since continued in operation under the name of Sprouse's Tourist Court. The cabins were built with her money and she took an active part in the management of them and a store and restaurant in connection with them. E. B. Sprouse died in 1942 and in 1949 his widow married the appellee, Newton, an event which reduced her interest in her first husband's real estate to one-third for life under the terms of his will. After the death of E. B. Sprouse his widow continued to manage the business with success. Pursuant to the contracts with Newton which are the subject of this suit, the Sprouses increased to eighteen the number of their cabins which had comprised the Sprouse Tourist Court. They were located at the junction of U. S. Highways 15 and 60.

By a deed dated August 4, 1951, the seven Sprouse sons, who were the owners of the eighteen Sprouse cabins subject to their mother's

interest, conveyed to J. E. Newton and Hattie Sprouse Newton (their mother) a lot containing 24/25ths of an acre on Highway 15 adjoining the Sprouse Tourist Court property on the north; and by a contract between the same parties dated November 10, 1951, but agreed to before the deed, J. E. Newton and Hattie Sprouse Newton contracted to build eighteen cabin units and two laundry rooms (all on the 24/25ths acre, although the written contract does not so state). The Sprouse sons were to erect an office and the parties agreed to the laying of sewer lines for a sewage disposal system on the Sprouse land to serve both sets of cabins, with a division of the costs. It was then agreed that the thirty-six cabin units, the laundry rooms and the office were to be operated under one management with half the net profits to the Newtons and half to the Sprouses, both parties to retain title to their own land and the buildings thereon.

An agreement dated October 24, 1951, between J. E. Newton and his wife recited that Newton had agreed to furnish the money to build the eighteen cabins and his wife agreed to pay one-half of the cost of construction, to be paid out of her half of the profits therefrom, Newton reserving a lien on the land and buildings to secure the payment to him of "one-half such sums as the construction of the said cabins may cost."

The construction of the eighteen Newton cabins was completed about July 1, 1952. Prior thereto the relations between Newton and his wife descended into decided disharmony and worsened with the passing of time to the point of physical combat on occasions. In September 1953 Newton filed his bill of complaint against his wife and her seven sons in which he alleged that the agreement of November 10, 1951, created a partnership; that there had been "discord, disagreement and violent misunderstanding" as to how the business should be operated and that it was unsafe for him to continue business relations with the defendants. He prayed that a receiver be appointed, an injunction be issued, the partnership be dissolved and that proper decrees of reference and accounting be entered.

The defendants filed their answer and cross bill in which they denied that a partnership had been created and asserted that the agreement only defined the rights of the parties as to the use of jointly owned property. They alleged that the deed and contracts were all part of an over-all agreement made before the deed was executed, providing for the unit operation of the thirty-six tourist cabins of which Mrs. Newton was to be the manager; that said

agreement was the sole consideration for the deed and except for such agreement the Sprouse sons would not under any circumstances have sold the 24/25ths of an acre for the erection of a competing tourist court beside their own, which would be the result if the complainant was allowed to nullify his agreement and gain the advantage he sought; that complainant had refused all offers to settle accounts and had repeatedly declared that he intended to break the agreement of November 10, 1951. They opposed the appointment of a receiver and prayed that the complainant be required to live up to his agreement.

On November 2, 1953, defendants filed an amendment to their answer and cross bill which asserted that if a partnership was created the certificate required by statute had not been filed and they prayed that if the contracts between the parties should be held to have terminated, then that the deed be set aside on the ground of failure of consideration. On the same day the court entered a decree directing that the Sprouse Estate continue to operate the Sprouse cabins and pay the expenses thereof and that the complainant operate the Newton cabins and pay the expenses, each to keep an accurate record of the transactions.

By decrees duly entered the cause was referred to a commissioner with direction to take an account and report upon the matters set forth therein. Evidence for both sides was taken in the presence of the commissioner over a period of several days beginning October 1, 1954. He thereafter reported, so far as here material, these findings:

(1) The deed of August 4, 1951, and the contracts of October 24 and November 10, 1951, constituted an over-all agreement between the parties which was the only consideration for the deed; the complainant had refused to permit the thirty-six cabins to be operated as one unit as agreed, had thereby breached his contract and had persisted in his breach, by reason of which there had been a failure of consideration for the deed; the defendants who had complied or tried to comply with this over-all agreement were entitled to have the deed and contracts set aside, the parties to be placed *in statu quo,* and the complainant was allowed the sum of $74,778.06, the cost of the improvements made by him, together with one-half of the net profits from the operation of the eighteen Newton cabins through December 1952, and one-fourth of the net profits from the operation of the thirty-six cabins from January 1, 1953, until the court made its

decree.

(2) The rents received and expenses paid, and the amounts due by and to the parties respectively for the periods from June 28 through December 31, 1952; from January 1 through November 1, 1953; and from November 2, 1953, to September 30, 1954, were as shown by Exhibit Y filed with his report.

[The period through December 31, 1952, was fixed to accord with an agreement between the parties; the period to November 2, 1953, was to the time of the decree of that date; and the period to September 30, 1954, was to the beginning of the account. The complainant stated in his exceptions to the commissioner's report that the figures in Exhibit Y were substantially correct except that the commissioner failed to allow him credit for taxes and for insurance premiums totaling about $600.]

(3) All the parties had agreed in the beginning that Hattie Newton was to be the manager of the thirty-six tourist cabins which were to be operated under one management according to the contract of November 10, 1951.

(4) Approximately four of the eighteen Newton cabins were built on land owned by the complainant and not included in the 24/25ths of an acre that was conveyed by the Sprouses to him and his wife; but before the construction of the eighteen cabins was completed the complainant agreed with the defendants that if the four cabins were in fact on his land he would convey it so that all the Newton cabins would be on one tract, and complainant should be required to comply with this agreement. Much evidence was heard by the commissioner as to the location of the line between the Sprouse land and the complainant's land and the commissioner held in accordance with the complainant's contention that the line was as shown on a map identified as the Dodl plat and filed with the report.

The defendants filed no exceptions to the commissioner's report but the complainant filed nine. The court rendered a written opinion in which, without dealing specifically with the complainant's exceptions, it stated that it agreed with the findings of the commissioner in part and disagreed in part. The decree entered in pursuance thereof adjudicated as follows:

(a) The defendants were entitled to have the deed and the two contracts set aside as reported by the commissioner, but the defendants should reimburse the complainant for the value of the cabins he erected "in reliance upon the aforesaid contracts"; (b) the defendants

were entitled to have conveyed to them the Newton land upon which four and a fraction of the Newton cabins had been erected, one-third to Mrs. Newton for life (according to her first husband's will) and the rest to the Sprouse sons, describing it in the decree so as to include the driveway as now located on the complainant's land; (c) the defendants must pay to the complainant "by way of reimbursement of the value and cost of construction of the Newton cabins and the land owned by the complainant," as referred to, the sum of $100,000 on terms specified in the decree; (d) Mrs. Newton should have all the rentals on the Newton cabins collected by her prior to November 2, 1953; Newton should pay to the defendants the net collection of rentals made by him to November 2, 1953, and Newton should keep the profits from the operation of the Newton cabins since November 2, 1953; (e) defendants should pay the cost of the suit, including $700 fee to the commissioner for making the report.

The defendants appealed from this decree and made seven assignments of error. The complainant made no objection to the decree and assigned no cross error.

The assignments of error made by the defendants in substance assert that the commissioner's report should have been confirmed in its entirety and that the court erred in the rulings now to be dealt with.

Defendants say it was error to increase to $100,000 the amount to be paid by the defendants to the complainant to reimburse him for the "value and cost of construction" of the Newton cabins.

The amount allowed by the commissioner, $74,778.06, as stated, was stipulated by written agreement between the parties, filed before the commissioner, to be the total cost to Newton of building and equipping the eighteen Newton cabins.

The reasons assigned by the court in its opinion for increasing to $100,000 the amount found by the commissioner were these: Newton, an experienced lumberman, had been able to buy materials at low prices and had also supervised the construction of the cabins; he was entitled to a fair return of interest on his money; the cost of construction at the time of the decree would be 23% more than the original cost, as the court had ascertained from a reliable contractor; Newton's promise to convey his land on which four and a fraction of the cabins had been built was subject to conditions which did not happen.

The commissioner found that Newton violated his agreement that the cabins be built on the Sprouse land were to be operated as a unit with the Sprouse cabins under the management of Mrs. Newton. This was a finding of fact which was amply supported by the evidence and which the court properly did not disturb. *Shepheard* v. *Boggs*, 198 Va. 299, 304, 94 S. E. 2d 300, 303-4. The commissioner held that this breach of contract by the complainant resulted in a failure of consideration for the deed which entitled the defendants to have the deed and contract set aside. This finding was confirmed by the court and none of the parties complains about that. The jurisdiction of equity to grant relief in such case is well settled, "and having acquired jurisdiction the court should administer such relief as appears to be proper in the particular case." *Echard* v. *Waggoner*, 126 Va. 238, 244, 101 S. E. 245, 247. The same form of relief is not applicable to every case, but each case must be dealt with in the light of its own circumstances. *Cf. Keister* v. *Cubine*, 101 Va. 768, 770, 45 S. E. 285, 286.

In a suit for the rescission of an instrument the plaintiff as a condition of obtaining such relief is usually required to restore the benefits he has received, according to the equitable maxim that he who seeks equity must do equity, and he will not be allowed to gain an unconscionable advantage from the transaction. A vendor who seeks to cancel his contract, particularly where the ground is the wrong of the vendee, is entitled to deduct from the consideration paid to him any financial loss sustained by him by reason of the contract and the amount of the financial benefit received by the vendee during his possession under the contract. 9 Am. Jur., Cancellation of Instruments, §§ 39-40, pp. 384-5. In such proceeding the aim of equity is to award complete, just and equitable relief, with a view to restoring the parties to the *status quo* and equitably adjusting their interests under the circumstances of the case. 12 C.J.S., Cancellation of Instruments, § 77, p. 1077. *Cf. Long* v. *Harrison*, 134 Va. 424, 447, 114 S. E. 656, 663.

We said in a partition case where one joint tenant had improved the property at his own expense that the allowance of compensation for improvements is made not as a matter of legal right but purely from the court's desire to do justice "and therefore the compensation will be estimated so as to inflict no injury on the co-tenant against whom the improvements are charged." *Ballou* v. *Ballou*, 94 Va. 350, 352, 26 S. E. 840. See also *Dalgarno* v. *Baum*, 182 Va. 806, 808, 30

S. E. 2d 559, 560. In ejectment actions a defendant who makes improvements under a reasonable belief in the validity of his title may recover therefor not exceeding the amount actually spent in making them, and not exceeding the amount to which the value of the property is actually increased thereby. Code § 8-845.

■ The reasons that influenced the court to increase complainant's compensation by approximately twenty-five thousand dollars are not, we think, valid reasons. The complainant contracted with the Sprouses to erect the cabins and with his wife that she should pay him "for her one-half of the cost of construction." It was his duty to procure the materials at the best price he could reasonably obtain and to supervise the construction. He is not entitled to charge the defendants for his performance of that duty. There is no evidence in the record that the cost of constructing the Newton cabins at the time of the decree would be 23% more than the cost at the time they were built. The building contractor who so informed the court was not a witness in the case. Information so obtained cannot be resorted to for the purpose of supplementing the record and it was error to use it as a basis for the decree. *Darnell* v. *Barker*, 179 Va. 86, 93, 18 S. E. 2d 271, 275; *Roark* v. *Shelton*, 169 Va. 542, 194 S. E. 681. Nor do we think that the present value of the cabins, as to which there is no evidence, would be the proper measure of recovery by the complainant under the facts of this case.

■ Another element which the court considered as requiring the increase in the complainant's compensation was that the cost of construction was paid by the complainant some four years before the decree and that the complainant was entitled to a fair rate of interest on his money. The amount so allowed for interest was not stated, but in addition the decree allowed the complainant to retain the profits from the operation of the Newton cabins since November 2, 1953. From that date to September 30, 1954, those profits, according to the commissioner's report, were $13,290.92, or approximately $1100 a month, nearly three times the interest on the amount fixed by the commissioner. The complainant is not entitled to both interest and profits. It has been established that he breached the contract and thereby prevented the operation of the enlarged motor court as a unit under the management of his wife, thus depriving the defendants of the profits reasonably anticipated by them from such operation. Moreover, he could not have operated the Newton cabins without using the sewage disposal facilities and water supply on the

Sprouse land, and he had the benefit of the central heating system, the office, the laundry and the advertising, for some of which defendants had spent substantial sums. The complainant, by his refusal to perform the contract, not only disappointed the defendants with respect to future profits, but his breach also served to diminish the defendants' receipts from their eighteen cabins because the Newton cabins were newer and more modern than the Sprouse cabins, rented for higher prices and were given preference in the assignment of patrons. The complainant is not entitled to profit by his wrong but only to an adjustment that will be fair to him and inflict no injury on the defendants.

The commissioner did not allow the complainant interest on the amount found and agreed as the cost of constructing the cabins, but did allow him one-half of the net profits from the operation of the eighteen Newton cabins through December, 1952, which was in accord with the agreement among the parties, and one-fourth of the net profits from the operation of the thirty-six cabins from January 1, 1953. From the figures in the record it appears that this amounts to approximately the interest at 6% on the cost of construction. It was what the complainant agreed to in the beginning and represents a fair and equitable adjustment of the rights of the parties under the facts and circumstances of the case.

■ The complainant did not assign cross error to the decree which required him to convey along with and in the same interest as the 24/25ths of an acre referred to above, the land of the complainant on which the four and a fraction cabins were by agreement built, together with the strip of land in front of them and a driveway on their north side giving entrance to the Newton cabins as at present. The complainant made no objection to this requirement because, said his counsel in oral argument, the court allowed him $100,000. How much of that amount was for this land does not appear. The commissioner found that before the cabins were finished the complainant agreed with the defendants that if the four cabins extended on to his land he would convey the parcel so that all of the eighteen cabins would be on one tract and dealt with in connection with the Sprouse cabins, and that the complainant should be required to comply with that agreement. The complainant concedes in his brief that he told his wife when the cabins were being built that he was willing for the land on which the four and a fraction cabins were built "to go along as the other land was in the name of Mr. and Mrs. Newton." His

cross-examination shows the following questions and answers:

"Q. Did you agree that as to any cabins which turned out to be on your land that you would execute a deed to the land on which they stood jointly to yourself and her so that they would stand like the others stood?

"A. That is right, and when we get this straight I will do it any time."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Q. Now, Mr. Newton, let's go a little bit further. You say you are willing to do this when the matter is settled regardless whether it is settled for you or against you. Is that right?

"A. That is right."

It would be highly inequitable and injurious to the defendants to permit the complainant now to repudiate the true tenor and purpose of his agreement. The trial court properly ordered that the complainant convey this land in the manner provided in the decree. The complainant is entitled to fair compensation, however, for this parcel of land in addition to the reimbursement fixed by the commissioner's report.

The cost of the case, including the commissioner's fee for the first report and for the report yet to be made, shall be paid by the complainant.

The decree appealed from is accordingly reversed to the extent hereinabove stated, the report of the commissioner is confirmed except as herein modified with respect to compensation to the complainant for the land to be conveyed by him as provided by the decree, and the cause is remanded with direction to refer it back to the commissioner to take a further account and state the rents, operating expenses and profits from the operation of the thirty-six cabins from the date shown in his first report to the date of filing his next report, and to state the proper division thereof between the complainant and the defendants on the basis stated in his first report, ascertain the balance due the complainant on the $74,778.06 cost of construction after applying the proper available credits, and the balance so ascertained shall bear interest from the date of the filing of the report. The commissioner should further report the fair compensation to be paid to the complainant for the land on which the four and a fraction cabins were built together with the adjacent strip, as provided

in the court's decree, with a proper description thereof to be included in the deed therefor to be made to the defendants.

*Affirmed in part,*
*reversed in part*
*and remanded.*