## Staunton

### Hattie Gough S. Newton, Et Al. v. John Ernest Newton.

September 2, 1960.

Record No. 5113.

Present, All the Justices.

The opinion states the case.

*John B. Boatwright* (*Robert Whitehead; Whitehead & Marshall*, on brief), for the appellants.

*W. M. Abbitt* (*George Abbitt, Jr.*, on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

This is the second appeal in this cause. The first was decided in an opinion rendered January 20, 1958, in *Newton* v. *Newton*, 199 Va. 654, 101 S. E. 2d 580, in which the origin of and proceedings in the cause are stated.

In that opinion the decree of the trial court entered November 14, 1956, was reversed in part and affirmed in part, and the report of Commissioner Rogers, to whom the cause had been referred, was confirmed except with respect to compensation to the complainant, John E. Newton, for a small parcel of land to be conveyed by him to the defendants, who are Mrs. Newton (formerly Mrs. Sprouse), and her seven (Sprouse) sons. The cause was then remanded with direction to refer it back to the Commissioner to take a further account and state (1) the rents, operating expenses and profits from the operation of the 36 tourist court cabins (being the 18 Sprouse cabins and the 18 Newton cabins, the subject of this litigation) from the date shown in his first report, September 30, 1954, to the date of filing his next report; (2) to state the proper division thereof between the complainant and the defendants on the basis stated in his first report; (3) to ascertain the balance due the complainant on the cost of constructing the Newton cabins after applying the proper available credits, to bear interest from the date of filing the report; and (4) the fair compensation to be paid to the complainant for the parcel of land to be conveyed by him to the defendants.

After the remand the complainant filed a petition in the court below on April 10, 1958, asking "that he be allowed a fee of one dollar for each cabin or motel unit that he has rented out of the Newton motel since November 2, 1953". The defendants demurred to the petition on the ground that it was precluded by the former decision. The demurrer was overruled and the defendants then filed an answer and petition in which they asserted that if such an allowance be made to Newton then a similar allowance should be made to them for their services in renting the Sprouse cabins.

By decree of May 5, 1958, the trial court referred the cause to

Commissioner Rogers to take the account directed, and allowed the parties to present to the Commissioner their claims for rental services set up in their petitions. The Commissioner heard evidence and afterwards, on November 13, 1958, filed his report stating the receipts, expenses and profits from operating the 18 Newton cabins and the 18 Sprouse cabins from October 1, 1954, through May 31, 1958, the date to which the parties submitted their accounts. The Commissioner disallowed the claim of the complainant for services in renting the Newton cabins and the claim of the defendants for renting the Sprouse cabins. He found the total net profits of the Newton cabins for the period stated to be $41,609.67 and the net profits of the Sprouse cabins $13,814.26, a total of $55,423.93, to be divided one-fourth to complainant and three-fourths to defendants, as determined by his first report and confirmed by this court. He applied the defendants' share from this report and the first report to the $74,778.06 construction costs of the Newton cabins due to the complainant and ascertained the balance due complainant at May 31, 1958, to be $30,670.94.

The Commissioner further reported that a fair and just compensation for the small parcel of land to be conveyed by the complainant to the defendants was $500.

The complainant filed exceptions to the action of the Commissioner in disallowing his claim for rental services and to the allowance of only $500 for the land to be conveyed by the complainant. The defendants excepted to the disallowance of their claim for rental services only if the court should allow the claim of the complainant.

By decree of June 20, 1959, the trial court sustained the exceptions of the complainant and allowed him $10,647.18 for renting the Newton cabins to November 14, 1958, when the complainant delivered possession of the Newton cabins to the defendants pursuant to a decree of the trial court. The court disallowed the like claim of the defendants for the same period, amounting to $11,279. The court also sustained the exception of the complainant to the allowance of $500 for the parcel of land to be conveyed by him and increased that amount to $2500. We granted the defendants an appeal and under their assignments of error they contend first that the court erred in allowing the complainant's claim for rental services.

The Commissioner did not state his reason for disallowing this claim. In its opinion the trial court stated that the complainant paid Lynwood Sprouse for the period named one dollar for each cabin

rented for five dollars or more, and fifty cents for cabins rented for less than five dollars, and it seemed to the court to be fair and right to allow the complainant the same for cabins he rented personally, of which he appeared to have kept an accurate account.

That he kept an accurate account is disputed by the defendants. There was evidence from several witnesses to the effect that others rented the Newton cabins in substantial number and that the wages of at least four of them were charged in the operating expenses allowed by the Commissioner.

But the ruling of the Commissioner disallowing the whole claim should have been sustained because the claim was contrary to the basis of accounting determined by the first report of the Commissioner and confirmed by this court on the former appeal.

As stated in the opinion on the first appeal, this suit was brought by the complainant, Newton, in September, 1953, against his wife and her seven sons, praying *inter alia* for the appointment of a receiver, the issuance of an injunction, and the termination of the agreement of November 10, 1951, between the parties under which the 18 Sprouse cabins and the 18 Newton cabins were to be operated in joint ownership under the management of Mrs. Newton, with half of the net profits to the Newtons and half to the Sprouses. By a decree of November 2, 1953, appointment of a receiver was refused and it was ordered that the Sprouses continue to rent the Sprouse cabins and Newton to rent the Newton cabins, each to keep an accurate record of receipts and expenses, but that Lynwood Sprouse, one of the seven sons, should have the right to rent the Newton cabins when Newton was not there and turn the collections over to Newton less his rental fees "according to the schedule now in effect for cabins rented by him," plus fifty cents for each cabin rented by Newton. Lynwood had previously been employed by the parties to rent both the Sprouse cabins and the Newton cabins. Newton testified that when the judge provided for the payments to Lynwood he, Newton, volunteered to give him "50¢ on the ones I rented". Mrs. Newton testified: "Lynwood is employed as an employee. Mr. Newton nor myself never classed ourselves as employees as we were sharing in the profits and he would naturally help out." She testified that she had rented Newton cabins and Sprouse cabins and had never made any charge for her personal services.

Neither did Newton make any charge for his services in renting Newton cabins in the former accounting. In that accounting the

Commissioner reported the rentals received, the operating expenses and the net profits from both the Newton cabins and the Sprouse cabins through September, 1954, with no allowance to Newton and no claim by Newton for personal services in renting the cabins. We confirmed that report of the Commissioner and directed a further reference to bring the accounting down to date and to state the proper division of the net profits between the complainant and the defendants "on the basis stated in his [Commissioner's] first report."

We also confirmed the Commissioner's findings that all the parties had agreed in the beginning that the Newton cabins and the Sprouse cabins were to be operated under one management with Mrs. Newton as the manager. We said: "It has been established that he [Newton] breached the contract and thereby prevented the operation of the enlarged motor court as a unit under the management of his wife, thus depriving the defendants of the profits reasonably anticipated by them from such operation." (*Newton v. Newton, supra,* 199 Va. at 661, 101 S. E. 2d at 586) We further said that the complainant's breach of the contract "also served to diminish the defendants' receipts from their eighteen cabins because the Newton cabins were newer and more modern than the Sprouse cabins, rented for higher prices and were given preference in the assignment of patrons" (199 Va. at 662, 101 S. E. 2d at 586), and that the defendant was not entitled to profit by his own wrong.

In the contract of November, 1951, referred to in the former opinion, there was no provision for payment to Mrs. Newton of any salary or wages for managing the 36 cabins. When the application by the complainant for a receiver was denied, the Sprouse cabins were turned over to the Sprouses and the Newton cabins to Newton to operate pending the litigation and subject to the contract with Lynwood Sprouse. Obviously this contemplated the operation of the cabins by the respective parties as owners and their compensation would come as profits from the operation and not from salary or wages. Consequently, on the first accounting neither the complainant nor the defendants made any claim for compensation for personal services other than Lynwood Sprouse under his contract. It was not until after the decision on the first appeal that the complainant asserted his claim for labor in the operation of the Newton cabins. His claim was an afterthought, inconsistent with his first position and in conflict with the former decree of this court. The Commissioner proper-

ly disallowed the claim and the court was in error in allowing it. See 1 Mich. Jur., Appeal and Error, §§ 342-3, pp. 774-5.

■ In accordance with the former decision the trial court directed Commissioner Rogers to report the fair compensation to be paid to the complainant for the land on which the four and a fraction Newton cabins had been built, together with an adjacent strip, to be conveyed to the defendants by the complainant as set out in the former proceedings. After hearing the evidence offered by the parties on the question the Commissioner found that $500 "is a fair and just compensation to be paid the complainant for the small piece of land of about 21/100 of an acre . . ." The trial court overruled this finding and fixed this compensation at $2500.

This parcel fronts 39.2 feet on Highway 15 and adjoins on the north the 24/25 of an acre on which most of the Newton cabins were built. It originally contained .2667 of an acre but was reduced to about .21 of an acre by a sale by the complainant to the Highway Department of a strip of this and his adjoining land along the west side of Route 15 to widen it. This sale comprised 1.32 acres and the consideration was on the basis of $500 an acre for the land itself.

Three witnesses for the defendants, including the Treasurer and the Commissioner of Revenue of the county, testified before the Commissioner as to the value of this parcel. They placed its value at from $350 to $375.

Three witnesses, Anderson, Elcan and Davis, testified for the complainant. Anderson owned the corner lot on the opposite side of the road from the Newton motel, part of a 10-acre tract he purchased in 1949 for $4000. He valued the .2667 of an acre at $2500. Elcan lived across the road from the Newton cabins on a parcel of .515 of an acre, fronting 129.7 feet on Highway 15, which he bought from Anderson in 1954 for $500 and on which he built a $30,000 residence. He later sold .18 of an acre to the Highway Department, which made an 18-foot cut in front of his house, reducing the distance from his house to the road from 58 feet to about 28 feet. The Highway Department paid him $4000. He valued the .2667 of an acre at $2500 to $3000. Davis, who lived about two miles away, valued it at $2500. He was asked whether he took into consideration the buildings already on it. He replied, "Everything just like it stands."

The trial judge stated that all the witnesses were known by him to

be reputable men but he thought those living close to the property would be better qualified to fix its true value. He added, "I viewed this property carefully, and reached the conclusion that it is well worth $2,500.00."

It is the established rule in Virginia "that the conclusions of a commissioner, where the evidence has been taken in his presence, should be sustained unless it plainly appears, upon a fair and full review, that the weight of the evidence is contrary to his findings." *Hudson* v. *Clark*, 200 Va. 325, 329, 106 S. E. 2d 133, 136. It is also the rule that " 'the individual and extrajudicial knowledge on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record.' " *Darnell* v. *Barker*, 179 Va. 86, 93, 18 S. E. 2d 271, 275.

We cannot say that the weight of the evidence is contrary to the Commissioner's finding. He also knew the witnesses who testified before him. From the evidence as to other real estate transactions in the immediate area he could reasonably conclude that the valuations given by the complainant's witnesses were excessive. The complainant himself placed a value of $500 an acre on the 1.32 acres in the strip he sold to the Highway Department. The $500 fixed by the Commissioner for this .21 of an acre represents a value of $2381 for one acre. A valuation of $2500 represents a rate of $11,905 for one acre, which is ten times the 1955 appraised value of the tract from which the .21 of an acre is taken, and twenty times its assessed value.

Our conclusion is to reverse the decree appealed from and to confirm the report of the Commissioner which disallowed the complainant's claim for rental services and fixed the value of the .21 of an acre at $500.

The Commissioner found the balance due to the complainant on construction costs of the Newton cabins to be $30,670.94, calculated only through May 31, 1958, the date to which the parties accounted to the Commissioner, and his report was filed November 13, 1958. It appears from the decree appealed from entered June 20, 1959, that the defendants on that day filed with the court a statement of income and expenses for the period from June 1, 1958, to November 14, 1958 (the date on which, as stated, the complainant delivered possession of the Newton cabins to the defendants), showing a net profit of $2,386.48 from the operation of the Sprouse cabins, without deduction for rental services; and that the complainant likewise filed

a statement of income and expenses from the Newton cabins for the same period showing a net profit of $3,381.76, without deduction for rental services.

This cause is therefore remanded to the trial court with direction to add these additional net profits to those reported by the Commissioner and ascertain the balance due complainant on construction costs as of November 14, 1958, after applying as a credit the sum paid into court by the defendants on November 15, 1958, and direct the payment of such balance by the defendants with interest thereon from November 14, 1958, as provided in said decree of June 20, 1959. The court shall further direct the conveyance to the defendants of the .21 of an acre, upon the payment by them of the $500 compensation therefor, and the vacating and canceling of the deed heretofore made to the Newtons for the 24/25 of an acre, as provided in said decree.

The costs in the trial court and in this court shall be paid by the complainant.

*Reversed and remanded.*