## CIRCUIT COURT OF FAIRFAX COUNTY

University Support
Services, Inc.

v.

Stephen J. Galvin et al.

July 8, 1993

Case No. (Chancery) 126614

BY JUDGE STANLEY P. KLEIN

In its nine count Second Amended Motion for Judgment Plaintiff sought injunctive relief, compensatory damages, punitive damages, attorney's fees and costs against Defendants Stephen J. Galvin, Scott A. Clark, Education Funding Services, Inc., and Michelle Tanchel. During trial Plaintiff nonsuited Defendant Tanchel. The Court found that liability had been satisfactorily proven against the remaining Defendants on count I (violation of Va. Trade Secrets Act, Va. Code § 9.1–336 *et seq.*), count IV (Conversion), count VI (Breach of Fiduciary Duty against Defendants Galvin and Clark), count VIII (Civil Conspiracy against defendants Galvin and Clark), and count IX (Breach of Contract against Defendant Clark). For the reasons stated on the record, the Court awarded an injunction against each of the Defendants, nominal damages of five dollars on the breach of fiduciary duty, civil con-

spiracy and breach of contract counts, and an additional ten dollars compensatory damages on the conversion count.[1] The Court took under advisement the issues of punitive damages, attorneys' fees and costs.

The Court conducted a second hearing at which the Plaintiff presented evidence in support of its prayer for attorneys' fees and certain costs. Counsel for the parties stipulated that the Court could consider the Court's own experience in conjunction with this evidence in determining the amount of attorney's fees to be awarded under count I.[2] Counsel were invited to submit any additional authorities which supported the positions argued at this hearing. The Court considered each of the additional authorities presented, the memoranda of counsel and conducted a line by line review of the statements for services rendered submitted by Plaintiff's lead counsel, the firm of Fox and Grove. For the reasons hereinafter set forth, the Court awards punitive damages and attorneys' fees but rejects Plaintiff's claim for costs based upon the fees charged by private process servers.

## I. *Punitive Damages*

An award of punitive damages under Virginia law must be based on actual malice. *Peacock Buick v. Durkin*, 221 Va. 1133 (1981); *Jordan v. Sauve and Koons*, 219 Va. 448 (1978). Actual malice may be proved by showing that the Defendant's actions were motivated by "ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another." *Peacock Buick*, at 1137; *Lee v. Southland Corporation*, 219 Va. 23, 27 (1978).

Defendants correctly assert that punitive damages are not favored in Virginia. *Owens-Corning Fiberglass Corp. v. Watson* 243 Va. 128, 144, (1992). They argue that an award of substantial punitive damages is not warranted in this case for the following reasons: (1) that the circumstances do not justify an award of punitive damages; (2) that an award of punitive damages must be predicated on an award of compensatory damages not nominal damages and there was no basis for an award of compensatory damages in this case; (3) that any award of punitive damages must be proportional to the award of compensatory

---

[1] *See* Partial Transcript April 13, 1993, proceeding.

[2] Even without the stipulation, the Court could have considered its own experience and knowledge. *Beale v. King*, 204 Va. 443, 446 (1963).

damages or it would be both violative of Virginia precedent and unconstitutional. The Court rejects each of these arguments.

The Court agrees that punitive damages are only to be awarded in cases of "the most egregious conduct." *Owens Corning Fiberglass Corp.* at 144. The Court, however, finds that the evidence presented at trial was clear and convincing that the conduct of Galvin, Clark and EFS met this standard. Galvin and Clark occupied management positions in the Plaintiff's organization and were afforded access to Plaintiff's highly confidential proprietary information as a result of their positions of trust. Galvin and Clark abused that trust. Giving Galvin and Clark the benefit of any reasonable doubt, for approximately the last month that they were employed by USS Galvin and Clark were actively but surreptitiously involved in the formation of a company whose corporate purpose was to compete with USS. Articles of Incorporation and bylaws for the competing company were drafted at the request of Galvin and Clark and their co-conspirator Lee Manfield while Galvin and Clark continued to receive their periodic paycheck from USS. This Court has little doubt that a major, if not the primary reason why Galvin instructed USS employees to compile the Marketing Binder was to provide him and his new company with easy access to all of the information reasonably necessary to solicit virtually all of USS' major clients. When Galvin and Clark left USS they had the identity, contact person, business volumes and tendencies, and other relevant information for each of the clients in USS' ConSern Program. The Court has no doubt that if it were not for the investment of time necessary for EFS to procure the ACC contract and the filing of this lawsuit, EFS would already be actively soliciting clients of USS.

During the January, February, March 1992 time frame, USS was actively marketing the Association of Chiropractic Colleges (ACC) and Galvin, the Director of Marketing, was in charge of that effort. The Court finds that Galvin used much of the information he acquired during that effort, including but not limited to the February memorandum from the ACC presidents, the February 28 Huddleston memorandum and the computer cash flows, run by Ed DePirsis, to put together EFS' proposal to the ACC.

Galvin and Clark compounded their blatant breaches of their fiduciary duties to USS by discarding evidence of their wrongdoings, withholding documents during discovery, filing false affidavits in support of pre-trial motions in this case and being less than candid in their

testimony at trial.[3] This Court shares the Virginia Supreme Court's concerns about punitive damage awards. However, under the egregious facts in this case, an award of punitive damages is entirely proper.

Defendants next argue that an award of nominal damages cannot support an award of punitive damages. In support of that argument they cite language in the Virginia Supreme Court's decision in *Gasque v. Mooers Motor Car Co.*, 227 Va. 154 (1984), wherein the Court stated "an award of compensatory damages is an indispensable predicate for an award of punitive damages . . . ." *Id.* at 159. Defendants contend that the absence of a reference to nominal damages in that language precludes an award of punitive damages when only nominal damages are awarded. *Gasque* cannot stand for that proposition because in Gasque *no* damages either compensatory or nominal were awarded as rescission of the contract was the only remedy. More recently in *Valley Acceptance Corp. v. Glasby*, 230 Va. 422 (1985), the Virginia Supreme Court recognized that an award of punitive damages can be predicated solely on an award of nominal damages when it said "Here, *neither* compensatory damages *nor nominal* damages were awarded against Valley. Consequently, punitive damages could not be awarded." *Id.* at 432 (emphasis supplied). *See also U.S. v. Snepp*, 595 F.2d 926, 937 (4th Cir. 1979); *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133, 141, n. 9 (7th Cir. 1987) (citations omitted).[4]

Even if an award of nominal damages were not a sufficient predicate for an award of punitive damages, an award of punitive damages would still be proper under count IV. Compensatory damages were in fact awarded for the Defendants' conversion of the Plaintiff's property. Defendants argue that an award of ten dollars for compensatory damages constitutes nominal rather than compensatory damages. Defendants are mistaken. Compensatory damages need not be large or substantial. *News Leader Co. v. Kocen*, 173 Va. 95, 108–9 (1939). The

---

[3] See Plaintiff's Memorandum in Support of An Award of Punitive Damages, pp. 8–10.

[4] The Court however declines to award any punitive damages under Count VI Breach of Fiduciary Duty. Tort damages can only be awarded for breach of a duty existing at common law and not one arising solely out of a contract between the parties. *Foreign Mission Board v. Wade*, 242 Va. 234, 240–1 (1991). As the fiduciary duties of Galvin and Clark arose solely as a result of their contacts with Plaintiff, an award of punitive damages under this Count would be improper.

fact that the Court did not find that USS had sufficiently proven the substantial compensatory damages it sought under the conversion count did not preclude a finding of a lesser amount of compensatory damages. Defendants argue that the Court could not base its compensatory damage award on matters of general common knowledge such as the approximate cost of paper and supplies and cite *Newton v. Newton*, 202 Va. 96, 102 (1960), in support of their position. *Newton* is inapposite. In *Newton* the trial judge used his extrajudicial knowledge to reach an *expert* opinion on the value of a parcel of real property. In *Beale v. King*, 204 Va. 443 (1961), the Virginia Supreme Court affirmed that the trier of fact may use its experience and knowledge in judging the amount of compensatory damages to be awarded. In *Beale* the sole testimony relating to the amount of attorney's fees to be awarded was expert testimony from the Plaintiff's experts. The Supreme Court affirmed the trial court's ruling that this testimony was not binding on the trier of fact and that this testimony must be judged by the fact-finder "by applying to it their own experience and knowledge of the character of such services." *Id.* at 446. Triers of fact are often called upon to arrive at sums to be awarded for compensatory damages without the benefit of testimony specifically setting forth the quantum of those damages (e.g. pain and suffering, injury of reputation, inconvenience, loss of companionship). After hearing testimony as to the components of the Marketing Binder, the Court set out the sum of ten dollars as being the appropriate amount of compensatory damages, based in large part upon the then existing value of the paper, dividers and other components of the Marketing Binder. These were compensatory damages based upon the then existing value of the Marketing Binder, not merely nominal damages.

Defendants contend that no punitive damages may be awarded under count I because although the Court granted Plaintiff an injunction under this count it did not award compensatory damages. Defendants misread the plain language of § 59.1–338(B) of the Virginia Code. That section states that "if willful and malicious misappropriation exists, the Court may award twice *any* award made under Subsection A of this section, or $350,000 whichever amount is less" (emphasis supplied). The Court has found that the misappropriation was both willful and malicious. This section therefore statutorily authorizes an award of punitive damages in an amount not greater than the lesser of $350,000 or twice the *amount* of any award. As no award of monetary damages

was granted under count I, the Court is free to award punitive damages up to $350,000 under this count. If the plain meaning of the language used by the General Assembly in this statute could lead to illogical results, it is the province of the General Assembly to re-write the statute not the province of this Court through judicial fiat. *See Tiller v. Commonwealth*, 193 Va. 418, 420 (1952); *Lewis v. Commonwealth*, 184 Va. 69, 73 (1945).

Defendants finally argue that an award of punitive damages in excess of "nominal punitive damages" would both violate Virginia law and be unconstitutional. They cite *Stubbs v. Cowden*, 179 Va. 190, 201 (1942),[5] for the proposition that the amount of punitive damages must "bear some reasonable proportion to the real damages sustained." Defendants misquote the decision in *Stubbs*. The Virginia Supreme Court actually stated "The damages awarded should bear some reasonable proportion to the real damages sustained *and to the measure of punishment required*; otherwise, they indicate prejudice or partiality." *Id.* at 201 (emphasis supplied). *See also The Gazette v. Harris*, 229 Va. 1, 51 (1985). Punishment of the wrongdoer and deterrence to others who might follow the same path are the primary considerations in an award of punitive damages. *The Gazette* at 50. *Weatherford v. Birchett*, 158 Va. 741, 747 (1932). Lost profits in a new business or undertaking are difficult to prove under Virginia law.[6] Unless punitive damages are awarded against those who breach their fiduciary duties by misappropriating trade secrets, others will be encouraged to take similar action as an award of attorney's fees may be the only basis for a substantial award against them.

Defendants reliance on the holdings in *Pacific Mutual Life Insurance Co. v. Haislip*, — U.S. —, 11 S. Ct. 1032, 113 L. Ed. 2d 1 (1991), and *Johnson v. Hugo's Skateway*, 974 F.2d 1408 (4th Cir. 1992), is also unavailing. Those cases involved the propriety of jury instructions and jury awards. This case was tried by the Court without a jury. Moreover, on June 25, 1993, the Supreme Court of The United States again upheld the constitutionality of punitive damage awards in *TXO Production Corp. v. Alliance Resources Corp., et al.*, — U.S. —, (Record No. 92–479).

---

[5] Defendants Opposition to The Award of Compensatory or Punitive Damages, p. 5.

[6] *Goldstein v. Kaestner*, 243 Va. 169 (1992); *Mullen v. Brantley*, 213 Va. 765 (1973).

In fashioning an award of punitive damages in this case the Court has considered (a) the harm likely to result from the Defendants' conduct as well as the harm which has occurred; (b) the degree of reprehensibility of the Defendants' conduct, its duration, the Defendants' concealment of the wrongdoing and the existence of similar wrongdoing; (c) the profitability of the wrongdoing to the Defendants; (d) the evidence of the financial positions of the Defendants; (e) the cost of the litigation including the attorney's fees awarded to the Plaintiff; and (f) the lack of any criminal sanctions to the Defendants. *See Haislip*, 113 L. Ed. 2d at 22; *Johnson* at 1417–18; *Weatherford v. Birchet* at 747. After considering the evidence relevant to each of these factors the Court awards the Plaintiff punitive damages of $35,000 against Defendant Galvin, $25,000 against Defendant EFS and $15,000 against Defendant Clark, thereby totalling $75,000.

## II. *Attorney's Fees and Costs for Private Process Servers*

At the May 11, hearing Plaintiff introduced into evidence statements for services rendered by the firm of Fox and Grove totalling in excess of $450,000.[7] At the hearing Plaintiff conceded that approximately $25,000 of the fees should not be awarded against the Defendants.

Plaintiff's expert witness Peter Stackhouse testified that based upon his review of the statements of Fox and Grove, the relevant files, (nine volumes of pleadings and a correspondence file), his familiarity with this type of litigation and the difficulties involved in this case, the type of pleadings filed by Plaintiff's counsel were reasonably necessary, as were the hiring of a private investigator and a damages expert. He testified that he did not see anything on the time records of Fox and Grove which should not have been billed. He could not testify, however, as to whether the specific time spent on any activity was appropriate, as the time spent could have been either high or low. He further testified that intra-office conversations between the attorneys representing the plaintiff were necessary in this type of litigation and that it is customary for clients to be charged for these consultations. Stackhouse further testified, that use of paralegals is prevalent in Northern Virginia in this type of litigation and it is customary to bill the clients for the services of the paralegals. According to Mr. Stackhouse the

---

[7] The Court had previously ruled that it would not award fees based upon the time expended by local Virginia counsel.

hourly rates charged by Fox and Grove for the attorneys and paralegals involved in this litigation were reasonable rates for the Northern Virginia area.

Defendants concede that an award of attorney's fees is proper under count I. Defendants assert however that Plaintiff is only entitled to an award of reasonable attorneys' fees and contend that the fees charged by Fox and Grove were excessive. Defendants further assert that fees should not be awarded for time expended on the counts in which the Plaintiff did not prevail. Defendants finally claim that the attorneys' fees awarded must be judged by the results obtained by the Plaintiff in this litigation.[8]

In the abstract the Court agrees with each of the Defendants' assertions. However, the Court must weigh those contentions against the circumstances which actually existed in this litigation. The Court has reviewed each of the statements of Fox and Grove and has considered the Defendants' arguments and the relevant authorities.

In determining reasonable attorneys' fees, the fact finder "should consider such circumstances as the time consumed, the effort expended, the nature of the services rendered and other attending circumstances." *Mullins v. Richlands National Bank*, 241 Va. 447, 449 (1991). In determining whether the fees charged were reasonable, the fact finder should consider any expert testimony but is not bound by it. *Beale v. King* at 446. Under *Mullins* the reasonable value of future services could be considered, but Mr. Stackhouse did not testify as to what would reasonably be required to enforce this judgment, and Mr. Adams has argued that the judgment may be paid in full without any need for post judgment proceedings. Accordingly, the Court will not consider the cost of any future services.

Although the results obtained must be one of the factors considered by the Court, in cases such as this one where the causes of action are interrelated, a mathematical approach comparing the number of issues in the case to the issues prevailed upon, is not appropriate. *Hensley v. Eckerhart*, 461 U.S. 424, 435–6, n. 11, 103 S. Ct. 1933, 76 L. Ed. 2d 40, 52 (1983); *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991).

---

[8] Defendants also concede that an award of attorney's fees is proper under the counts where punitive damages are awarded. Defendants Memo., p. 9.

The ultimate monetary result may also overlook what was actually at stake in the litigation. *See Rappold v. Indiana Lumbermens Mutual Insurance Company*, 246 Va. 10 (1993). A permanent injunction was issued by this Court enjoining the Defendants from using proprietary information to attempt to solicit clients of the Plaintiff, whose contracts generate gross revenues in the millions of dollars.

In reviewing the statements from Fox and Grove, the Court has made significant adjustments for the following: (1) some intra-office conferences; (2) some conferences with local counsel; (3) some travel time that was billed at the rate of ten hours per day; (4) some paralegal time; (5) some time for duplicative work; (6) some time for amending pleadings; (7) some time for work pursuing severable claims which were not successful; (8) some time preparing expert testimony on damages testimony which the Court ruled was inadmissible; (9) some time for researching issues which a member of the Virginia bar would not have needed to research; and (10) some time for other attending circumstances.[9] When all of the facts and circumstances are considered, the Court awards the Plaintiff $237,500 as reasonable attorney's fees under count I.

The Court rejects Plaintiff's claim for private process server's fees. (Exh. 100.) The costs of this proceeding pursuant to § 14.1–198 of the Code are to include filing fees, subpoena fees served by a sheriff and court reporter fees for appearance and transcript preparation for any *de bene esse* depositions which were introduced into evidence in lieu of the witness' appearance.

The Court therefore finds in favor of the plaintiff against each defendant on count I, affirms the injunction previously ordered from the bench and awards attorneys' fees of $237,500.00 plus costs as defined herein. The Court further finds in favor of the plaintiff against each defendant on Court IV and awards compensatory damages of $10.00 and punitive damages of $35,000.00 against defendant Galvin, $25,000.00 against defendant EFS, and $15,000.00 against defendant Clark. I further find for the plaintiff against defendants Galvin and Clark on counts VI and VII and award $5.00 nominal damages on each count. I finally find for the plaintiff against defendant Clark on count IX and award $5.00 nominal damages.

---

[9] The Court notes that two attorneys were present for both Plaintiff and Defendants throughout the trial.

Although I would also award the same $75,000.00 in punitive damages on count I and the same attorney's fees and costs on count IV, I do not enter judgement for those sums on those counts, as the awards would be duplicative of the punitive damage, attorney's fees and costs awards set out above. *See Tazewell Oil v. United Virginia Bank*, 243 Va. 94, 113 (1992).