# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Orgal T. Holland et al.

v.

MBM Sales, Inc., et al.

July 6, 1994

Case No. CH93-50

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this suit, purchasers (the Hollands) seek rescission of a real estate transaction on the ground of fraud. The commissioner has recommended that the sale be rescinded and that the Hollands recover compensatory damages against the seller (collectively, Burdette).

*Facts*

In the fall of 1990, Burdette placed advertisements in the local newspaper for the sale of unimproved land. In response, the Hollands contacted Burdette, and on October 1, 1990, the parties met at Lot 13, Section One, Arrowhead Subdivision. The Hollands explained that they were looking for a residential lot on which to build their home. After viewing the lot, which consisted of five mostly-wooded acres on State Route 624, the Hollands asked about utility easements. According to the Hollands, Burdette pointed out an existing overhead distribution line running along the front of the property. He also explained that the subdivision documents provided for utility easements along all sides of the lot. Nothing was said, they contend, about the easement that gives rise to this litigation: a 100 foot-wide overhead electricity transmission line easement that cuts diago-

nally across the lot. Burdette disputes the Hollands' testimony, claiming that he told them about the transmission line easement.

After the meeting, Burdette furnished the Hollands a copy of the Arrowhead Subdivision documents, including the subdivision plat. He also gave them a soil evaluation done by the local health department depicting places for the well, septic drainfield, and proposed house site. None of these documents showed the transmission line easement.

On October 4, 1990, the parties met again at the lot. Burdette produced a contract which contained a handwritten provision whereby the Hollands acknowledged having been informed about easements "that are and are not shown on the above-mentioned plat." The Hollands inquired about the meaning of that language and, according to them, Burdette said that it referred to the perimeter easements and the overhead line along the front of the property. Again, Burdette claims that he also mentioned the transmission line easement. The parties signed the contract and scheduled settlement for October 15, 1990, at the office of Burdette's attorney.

On October 15, 1990, settlement was held at the Hollands' residence. The parties disagree about why it was held there rather than at the attorney's office. The Hollands contend that they were at home getting ready to go to the attorney's office for the settlement when they received a call from Burdette who said that he was "running late" and he would pick up the closing papers and take them to the Hollands' home where they could go over everything and complete the settlement. The Hollands agreed. On the other hand, Burdette says that the settlement was held at the Hollands' home at their request.

A copy of the transmission line easement was included in the settlement package given to Burdette at the attorney's office. The Hollands say they never received it. Further, the Hollands were told by Burdette that they did not need owner's title insurance because a title examination had been done and "there were no problems." The Hollands signed all the settlement papers given to them by Burdette, including an acknowledgment that they had received copies of all easements affecting the property. They paid the purchase price of $25,000.00.

At the time of the Burdette-Hollands settlement, Burdette did not own the property. Later that same day, however, he settled on his purchase and took title to the lot.

All of the appropriate documents were recorded, and the Hollands later received their deed in the mail from Burdette's attorney.

Two years later, the Hollands applied for a construction loan. They intended to build a home on a knoll, or ridge, at the location sketched on the health department's soil evaluation report. That site is within the transmission line easement. When the Hollands closed their construction loan, they were given a list of easements that included the transmission line easement. According to the Hollands, they took no notice of that easement at the time, and nothing was said to them about it.

On January 4, 1993, Mr. Holland was clearing the lot when he was approached by Dennis Mitchell Jones, a field engineer for the electric cooperative that owns the transmission line easement. Jones was in the area on unrelated business. When he saw what Mr. Holland was doing and was told that a site was being cleared for construction of a home, he informed Mr. Holland of the transmission line easement across the property. Jones testified that he pointed out the location of the easement by reference to short stakes with faded ribbons which were between 100 and 200 feet apart through the wooded lot. Jones testified that Mr. Holland appeared to be "surprised" about the easement.

Mr. Holland went immediately to the Spotsylvania County courthouse and discovered the transmission line easement among the land records. He halted work and instituted this suit within weeks.

A few months before Burdette sold the property to the Hollands, he had attempted to sell it to Michael and Robin Chilton for $29,000.00. When the Chiltons learned of the transmission line easement, they told Burdette about it, and their contract was voided by agreement.

The evidence shows that Burdette is an experienced real estate seller. He has been in the business for many years. The Hollands, while educated, intelligent and articulate, are not so experienced. This was their second real estate purchase.

After an evidentiary hearing (the transcript of which consists of more than 400 pages), the commissioner filed a report in which she concludes that the transaction should be rescinded on the ground of fraud and that the Hollands should recover, in addition to the $25,000.00 purchase price, the sum of $1,034.01 as damages. The commissioner recommends no award of punitive damages, and no award of attorneys' fees under the Virginia Consumer Protection Act, but does recommend that all costs be assessed against Burdette.

Both parties filed exceptions to those portions of the report they find unacceptable.

## Fraud

Based on the evidence presented, the commissioner found fraud. She listed seven particulars in support of her conclusion.

Although a commissioner's report does not have the weight given to a jury verdict, Virginia Code § 8.01-610, the report is entitled to great weight and should not be arbitrarily disturbed when its conclusions are supported by the evidence. *Higgins v. Higgins*, 205 Va. 324 (1964); *Dodge v. Dodge*, 2 Va. App. 238 (1986). It has been held that a commissioner's report comes to the court "armed with a presumption of correctness" as to factual findings, especially where the evidence has been taken in the commissioner's presence and the factual findings are made upon conflicting testimony. *Morris v. U.V.B.*, 237 Va. 331 (1989).

In a fraud case where the purchasers of land contend that the seller misrepresented or concealed material facts, and the seller contends that he disclosed all material facts in a truthful manner, the commissioner is in an ideal situation to best determine the credibility of the witnesses and the weight to be given their testimony. Here, after conducting a lengthy evidentiary hearing, the commissioner determined that the testimony of the Hollands and their witnesses was more believable. The commissioner found that Burdette concealed the existence of the transmission line easement and that he made false representations with respect to it; that existence of the easement was material to the transaction; that the Hollands relied to their detriment on the misrepresentations; and that the totality of the evidence clearly and convincingly establishes that Burdette "intentionally and knowingly made false representations of a material fact with intent to mislead the Hollands."

Based on an independent review of the record, the court is of the opinion that the commissioner's factual findings are supported by the evidence. Her conclusions with respect to the credibility of the witnesses and the weight to be given their testimony are sound. The commissioner observed on page 18 of the report:

> [I]t is incredible to conclude the Hollands would purchase the property, for their intended purpose, with knowledge of the existence of the easement. The demeanor of the Hollands was such that [the commissioner] is convinced that if either of them had knowledge or even a suspicion that the easement existed, further investigation would have been conducted to reveal such points as contained in the [easement document] which requires . . .

written consent of [the electric cooperative] to construct any buildings or structures upon the right of way.

The commissioner cited and relied upon correct legal principles. As she pointed out, a party alleging actual fraud must prove by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to him. Clear and convincing evidence is such proof as will establish in the trier of fact a firm belief or conviction concerning the allegations that must be established. *Thompson v. Bacon*, 245 Va. 107 (1993); *Winn v. Aleda Construction Co.*, 227 Va. 304 (1984); see also 8B M.J., *Fraud and Deceit*, § 3 et seq.

If the Hollands are to be believed, as they were in this case, Burdette not only concealed the existence of the transmission line easement, but actually misrepresented the extent and nature of easements affecting the property when specifically asked by the Hollands. Clearly, he knew of the existence and location of the easement based on his aborted sale of the lot to the Chiltons. Just as clearly, the Hollands did not know of the easement for the reasons explained by the commissioner, including persuasive testimony about Mr. Holland's surprise when an official of the electric cooperative told him about it in January of 1993. That the Hollands relied on the misrepresentation cannot be doubted because they closed the transaction, paid the purchase price, elected a house design, obtained a construction loan, and began clearing a site for their structure directly in the path of the transmission line.

### The Recording Act

Burdette argues that the fact that the transmission line easement is recorded, properly indexed, and within the Hollands' chain of title precludes a finding of fraud because as a matter of law, the Hollands had constructive notice of the encumbrance.

One to whom a misrepresentation has been made as an inducement to enter into a contract has the right to rely on it and need make no further inquiry. In Virginia, one cannot commit fraud and then escape liability by saying that the party to whom the misrepresentation was made was remiss in failing to learn the truth. *Nationwide Insurance Co. v. Patterson*, 229 Va. 627 (1985).

Further, the doctrine of caveat emptor, alive and well in Virginia with respect to sales of land, affords no protection to a seller who makes false

representations of a material fact constituting an inducement to the contract. *Boykin v. Hermitage Realty*, 234 Va. 26 (1987).

Likewise, the recording statutes are not a defense to actual fraud. The recipient of a false representation may rely on its truth even though the falsely-represented fact is recorded. The purpose of the recording statutes is to provide protection to persons who buy a recorded title against those who have obtained paper title but failed to record it. The recording statutes are not intended as a protection for those who make fraudulent or deceitful representations. See *Restatement of the Law, Torts*, 2d § 540 comment b, and illustration 1; also see Am. Jur. 2d, *Fraud and Deceit*, § 263.

Finally, the evidence is sufficient to support the Commissioner's finding that Burdette impeded or prevented a reasonable inquiry when he told the Hollands that a title insurance policy was not necessary because the title had been examined and there were "no problems."

For these reasons, the court finds that the recording statutes afford no protection to Burdette under the circumstances of this case.

### Damages

The Hollands are entitled to be restored to their former position. Therefore, rescission and a return of the Hollands' purchase money ($25,000.00) is appropriate.

In addition, the Hollands are entitled to compensation for monetary loss sustained as a result of the fraud. *Newton v. Newton*, 199 Va. 654 (1958). The commissioner found that the Hollands had suffered recoverable losses totaling $1,034.01 as a result of Burdette's fraud. The commissioner found that the remainder of the damages claimed by the Hollands were incurred after the closing on their construction loan in October of 1992, at which time they received for the first time title documents that disclosed the existence of the transmission line easement. From that date, the commissioner held, the Hollands had no right to rely on Burdette's misrepresentation because they had reason to know of the falsity of the statements. They had a duty to mitigate their damages, which they could have done by perusing the title documents given to them at that time.

The record supports the commissioner's factual findings regarding compensatory damages. The legal principles that she has applied are correct. Therefore, the court confirms that aspect of the report.

The commissioner recommends no award of punitive damages, to which the Hollands take exception.

Punitive damages are not automatic in conjunction with fraud claims. Although a finding of fraud necessarily imports the commission of an intentional and deceitful act, Virginia requires proof of a degree of aggravation in the critical state of mind above the threshold level needed to establish liability for rescission or compensatory damages. An element of wantonness, malice, or overreaching beyond false representation must be shown. 8B M.J., *Fraud and Deceit*, § 36.

Here, the commissioner found that punitive damages are not justified. While that may be a fairly debatable point, the court cannot conclude from the record that the commissioner's view of the matter is plainly wrong or without evidence to support it.

### Costs and Attorney's Fees

The commissioner recommends that all costs of this proceeding be assessed against Burdette, including a commissioner's fee of $2,520.00. The court confirms this portion of the report.

The commissioner rejects the Hollands' request for attorneys' fees, which they are permitted to recover under the Consumer Protection Act.

Where a court concludes from clear and convincing evidence that actual fraud has been deliberately perpetrated, and the fraudulent representations were relied upon to the detriment of purchasers of real estate, it is inappropriate to require the victims of such deceit to bear their own legal fees. Virginia Code § 59.1-204 provides for the recovery of reasonable attorney's fees when the fraud occurs in a consumer transaction between a "supplier" and "consumer" and violates § 59.1-200. Such is the case here.

Counsel for the Hollands has submitted an affidavit of attorneys' fees. The court finds the fees reasonable. Accordingly, the Hollands will recover from Burdette the amount of $5,397.75 as reasonable attorney's fees incurred in this proceeding.

### Conclusion

The commissioner's report will be confirmed in its entirety, except that the Hollands will be allowed attorneys' fees in the amount of $5,397.75, in addition to the other relief recommended by the commissioner.